Dale M. HUBBARD, Plaintiff,

v.

TWIN OAKS HEALTH AND REHABIL-
ITATION CENTER; Careage Health-
care of California, Inc., and Sunbridge
Corporation, Defendants.

No. CIV.S 03 725 LKK/KJM.

United States District Court,
E.D. California.

Nov. 12, 2004.

Adam Sorrells, Scottlynn J. Hubbard, IV, Law Offices of Lynn Hubbard III, Chico, CA, for Plaintiff.

Brendan J. Begley, Carl J. Calnero, Porter, Scott, Weiberg and Delehant, Sacramento, CA, for Defendants.

## ORDER

KARLTON, Senior District Judge.

Plaintiff, Dale M. Hubbard ("Hubbard") brings this action against defendants Twin

Oaks Health and Rehabilitation Center ("Twin Oaks"), Careage Heath Care of California, Inc. ("Careage"), and Sunbridge Corp. (collectively "defendants") alleging that they discriminated against her on the basis of her disability. She seeks to recover, *inter alia,* pursuant to the Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code §§ 51 *et seq.,* and section 504 of the Rehabilitation Act ("Rehab Act"), 29 U.S.C. §§ 790 *et seq.* This matter is before the court on plaintiff's motion for partial summary judgment.

## I.

## FACTS [1]

The Twin Oaks Nursing Facility ("Twin Oaks") is a skilled nursing facility that was constructed in 1987. Statement of Undisputed Facts ("SUF") ¶ 1. Plaintiff is a paraplegic who uses a wheelchair to travel in public. SUF ¶ 2. Her mother was a resident at Twin Oaks from late December of 2002 to early February of 2003, SUF ¶ 8, during which time plaintiff visited Twin Oaks at least 15 times. SUF ¶¶ 14, 16. Plaintiff alleges, and defendants dispute, that she encountered architectural barriers at Twin Oaks that denied her full and equal access to the nursing home. One of her complaints concerns two ramps in the facility's parking lot which are allegedly too steep. SUF ¶ 10. According to plaintiff, one of those ramps also projects onto the access aisle of the accessible parking space, making it difficult to stabilize her wheelchair upon arrival. SUF ¶ 11. Other alleged barriers concern the soap and towel dispensers in Twin Oaks' restrooms. SUF ¶ 13.

While defendants dispute that there are architectural barriers at Twin Oaks, they have stipulated that remedy of specific barriers, if determined to be violative of the statute, are readily achievable. SUF ¶ 19.

## II.

## SUMMARY JUDGMENT STANDARDS UNDER FED. R. CIV. P. 56

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *See also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Sicor Limited v. Cetus Corp.,* 51 F.3d 848, 853 (9th Cir.1995).

Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322, 106 S.Ct. 2548. "[A] complete failure of proof concerning an essential

---

1. *Unless otherwise noted, this section con-* tains the court's finding of undisputed facts.

element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323, 106 S.Ct. 2548.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *See also First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Sicor Limited,* 51 F.3d at 853. In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed.R.Civ.P. 56(e); *Matsushita,* 475 U.S. at 586 n. 11, 106 S.Ct. 1348; *See also First Nat'l Bank,* 391 U.S. at 289, 88 S.Ct. 1575; *Rand v. Rowland,* 154 F.3d 952, 954 (9th Cir.1998). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Owens v. Local No. 169, Assoc. of Western Pulp and Paper Workers,* 971 F.2d 347, 355 (9th Cir.1992) (quoting *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987)), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505; *see also Cline v. Industrial Maintenance En-*gineering & Contracting Co., 200 F.3d 1223, 1228 (9th Cir.2000).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank,* 391 U.S. at 290, 88 S.Ct. 1575; *See also T.W. Elec. Serv.,* 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e) advisory committee's note on 1963 amendments); *see also International Union of Bricklayers & Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc.,* 752 F.2d 1401, 1405 (9th Cir.1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); *See also In re Citric Acid Litigation,* 191 F.3d 1090, 1093 (9th Cir.1999). The evidence of the opposing party is to be believed, *see Anderson,* 477 U.S. at 255, 106 S.Ct. 2505, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, *see Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (*per curiam*)); *See also Headwaters Forest Defense v. County of Humboldt,* 211 F.3d 1121, 1132 (9th Cir.2000). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines,* 602 F.Supp. 1224, 1244–45

(E.D.Cal.1985), *aff'd,* 810 F.2d 898, 902 (9th Cir.1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (citation omitted).

## III.

### UNRUH CIVIL RIGHTS ACT

Plaintiff seeks summary judgment pursuant to the Unruh Act by virtue of the defendants' alleged violation of Title III of the ADA, 42 U.S.C. § 12182(a). I turn to that contention.

■ The Unruh Civil Rights Act, codified in California Civil Code § 51, provides that "[a]ll persons ... are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ.Code § 51(b). The purpose of the Unruh Act "is to compel a recognition of the equality of citizens in the right to the peculiar service offered" by the entities covered by the acts. *Marina Point, Ltd. v. Wolfson,* 30 Cal.3d 721, 737, 180 Cal.Rptr. 496, 640 P.2d 115 (1982)(quoting *Piluso v. Spencer,* 36 Cal. App. 416, 419, 172 P. 412 (1918)); *see also Strother v. Southern California Permanente Medical Group,* 79 F.3d 859 (9th Cir.1996).

In effectuating its long-stated policy of ridding the state of discrimination, *see Warfield v. Peninsula Golf & Country Club,* 10 Cal.4th 594, 42 Cal.Rptr.2d 50, 896 P.2d 776 (1995), the California legislature amended the Unruh Act in 1992 to broaden the scope of its protection. As amended, § 51 provides that "[a] violation of the right of any individual under the Americans with Disabilities Act of 1990 ... shall also constitute a violation of this section." Cal. Civ.Code § 51(f). It is pursuant to this subsection that plaintiff seeks to recover. Accordingly, to determine if plaintiff may be granted summary judgment on her Unruh Act claim, I must examine whether she can establish a violation of the Americans with Disabilities Act ("ADA").

■ Before reaching the merits of that claim, however, I pause to address a preliminary issue raised by defendants. They assert that plaintiff is precluded from showing a violation of the ADA because this court previously dismissed that claim. For the reasons explained below, the contention does not lie.

On May 7, 2004, the court dismissed plaintiff's claims pursuant to the Americans with Disabilities Act, California's Health & Safety Code and the State's Business & Professions Codes. The court held that she was not entitled to injunctive or declaratory relief, because her mother was no longer a resident of the facility. As explained in the order, under the circumstances the court could not grant injunctive relief, the only remedy available under the ADA. It is plain that, contrary to defendants' apparent contention, the court never addressed the merits of plaintiff's ADA claim.

■ Defendants also contend, without citation to authority, that plaintiff may not recover pursuant to the Unruh Act based on an ADA violation, unless she first obtains injunctive relief under the latter. Again, defendants' contention is without merit.

■ The state legislature, unlike Congress, has provided that an individual may recover damages for a violation of the Unruh Act. The plain language and purpose of the Unruh Act is to provide that

individuals need only prove an ADA violation to obtain relief under the statute, not that they must first obtain relief under the federal statute. State law requires a liberal interpretation of the Unruh Act. *Isbister v. Boys' Club of Santa Cruz,* 40 Cal.3d 72, 75–76, 219 Cal.Rptr. 150, 707 P.2d 212 (1985). Because § 51(f) employs broad language, without any indication of an intent to limit recovery, it seems clear that the legislature intended to provide a remedy for individuals who suffered a violation of the ADA but who could not recover under that Act because the conditions justifying injunctive relief no longer obtain. I conclude that plaintiff may recover under the Unruh Act, even absent relief under the ADA itself.

## IV.

## THE ADA

Title III of the ADA prohibits discrimination against individuals on the basis of disabilities in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation. *See* 42 U.S.C. § 12182(a). Title III defines "discrimination" as, among other things, a failure to remove "barriers ... where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv); *Pickern v. Holiday Quality Foods Inc.,* 293 F.3d 1133, 1135 (9th Cir.2002). Plaintiff avers that defendants discriminated against her when they failed to remove certain architectural barriers at Twin Oaks.

■ In order to make a prima facie case under Title III of the ADA, a plaintiff

must prove that (1) she has a disability, (2) defendants' facility is a place of public accommodation, (3) and she was denied full and equal treatment because of her disability. To succeed on a ADA claim of discrimination on account of an architectural barrier, the plaintiff must also prove that (1) the existing facility at the defendants' place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable. *See* 42 U.S.C. § 12182(b)(2)(A)(iv); *see also Pascuiti v. New York Yankees,* No. 98 CIV. 8186(SAS), 1999 WL 1102748, at * 5 (S.D.N.Y. Dec.6, 1999) (plaintiff bears the initial burden of proving that barrier removal is readily achievable). If plaintiff satisfies her burdens, the burden shifts to the defendant to show that removal of the barriers is not readily achievable.

It is undisputed that Twin Oaks is a place of public accommodation. Further, plaintiff is disabled because she is a paraplegic who must use a wheelchair to travel in public. SUF ¶ 2. Plaintiff thus meets the first two elements of an ADA prima facie case. The issue in dispute, then, is whether she was discriminated against on account of her disability based on an architectural barrier.

## A. ARCHITECTURAL BARRIERS

■ Plaintiff avers that defendants violated the ADA by failing to abide by the Department of Justice's regulations implementing the ADA's public accommodation provisions and the corresponding ADA Accessibility Guidelines (ADAAG).[2]

2. Under Title III, Congress delegated to the Department of Justice the authority to promulgate regulations implementing Title III. *See* 42 U.S.C. § 12186(b). Congress also directed the Architectural and Transportation Barriers Compliance Board to issue minimum guidelines for accessibility, *see* 42 U.S.C. § 12204(a), and provided that the reg-

ulations promulgated by the DOJ must be consistent with those minimum guidelines. *See* 42 U.S.C. § 12186(c). As a result, the DOJ regulations for public accommodations adopt the ADA Accessibility Guidelines promulgated by the Architectural and Transportation Barriers Compliance Board. *See* 28 CFR § 36.406.

These regulations are divided into three categories. The first category of regulations require that newly constructed public accommodations must comply with specific accessibility requirements set forth in the ADAAG. *See* 28 CFR § 36.401, 28 CFR § 36.406. The second category of regulations concerns the accessibility requirements imposed on public accommodations altered after January 26, 1992. *See id.* The third category requires the removal of architectural barriers in preexisting public accommodations. *See* 28 CFR § 36.304. Under the ADA's continuing barrier removal obligation, it is discriminatory for owners, operators, lessors or lessees to fail to remove architectural barriers that deny disabled persons the goods and services offered to the general public. *Parr v. L & L Drive–Inn Restaurant,* 96 F.Supp.2d 1065, 1086 (D.Haw.2000).

For purposes of the ADA, the Twin Oaks facility is a preexisting facility, as it was built in 1987.[3] SUF ¶ 1. Accordingly, Twin Oaks is governed by the third category of regulations and is obligated only to remove existing architectural barriers.

To prove that Twin Oaks is in violation of the ADA, plaintiff hired an asserted expert, Hollynn D'Lil, to identify the architectural barriers. The expert report identifies alleged barriers by comparing measurements of various items to the standards set out in the ADAAG. According to the report, Twin Oaks' parking lot, entrance, and restrooms contain barriers in violation of the ADAAG. *See* Exh. A to Disclosure of Pl's Expert Hollyn D'Lil.

 Defendants maintain that, because they dispute D'Lil's findings, there are issues of material fact which preclude summary judgment based on her report. As supporting evidence, defendants cite to a declaration from Twin Oaks' Director of Maintenance, Paul F. Bravo. Exh. A to Def's Br. in Oppo. to Mot. for Summ. J. Bravo declares that "the subject facility has been deemed compliant with the disability access requirements." *Id.* at 2. He further states that by reviewing D'Lil's measurements and "[t]o the best of [his] knowledge, experience and ability," the "measurements are not accurate." *Id.* Plaintiff properly objects to these portions of the Bravo declaration because they constitute improper legal conclusions and conclusory statements without supporting facts. Motions for, and opposition to, summary judgment must be supported by admissible evidence. *See* § II, *supra.* Defendant does not tender any alternative measurements, and under the circumstances plaintiff's objections are well taken. Accordingly, the facts tendered by plaintiff's expert are undisputed.

### 1. *Removal Is Readily Achievable*

Plaintiff asserts that she meets her burden of proving that the removal of barriers is readily achievable by pointing to the parties' stipulation. As defendants point out, however, the parties have stipulated only as to a specific set of alleged barriers. *See* Stipulation and Order Regarding Readily Achievable Barriers ("Stipulation and Order"). The stipulation identifies 23 architectural barriers, which include those concerning (1) concrete ramps encroaching into the access aisles of the disabled parking spots; (2) accessibility of parking spots having front and side slopes that exceed the permissible gradient; (3) the slope, side slope, and length of run of a ramp running from the parking lot leading to the front door; (4) the height of the restroom paper towel holder; and (5) the height of the soap dispenser in the restroom. *See* Exh. A to Stipulation and Order. Because plaintiff does not attempt to show that barriers other than those included in the

---

**3.** Plaintiff does not allege that the facility was altered after 1992.

parties' stipulation are readily achievable, the court will limit its examination to the barriers listed therein.

### 2. ADAAG Violations

a. The slope of the accessible parking spaces and the loading aisle were measured at 4.4% to 4.7%. Section 4.6.3 of the ADAAG requires that accessible parking spaces and access aisles have a maximum slope of 2% in any direction. These parking spaces are therefore in violation of the ADAAG.

b. The ramp which encroaches into the loading isle has slopes of 9.1% and 9.2%. The maximum allowed curb ramp slope allowed under the ADA, however, is 8.3%. ADAAG §§ 4.7.2. Defendants argue that the governing regulation is § 4.8 because Twin Oaks is an existing building. While it is true that § 4.8 provides that "existing buildings or facilities" may have slopes different than that stated in § 4.7.2, it limits that exception to circumstances where "space limitations prohibit" compliance. Defendants do not argue, however, that they qualify under this exception.

c. The side slopes of the encroaching curb ramps are greater than 10%, whereas the maximum slope allowed for a side flare is 8.3%. ADAAG § 4.7.5.

d. The loading zone curb ramps, with slopes of 14.1%, are out of compliance with ADAAG § 4.72, which provides that the maximum allowed is 8.3%.

e. The side flares of the loading zone curb ramps were measured at 19.4 % and 20.2%, in violation of the 8.3% maximum under ADAAG §§ 4.7.5.

f. Two unisex restrooms near the lobby have towel dispensers with operable parts 52 inches above the floor. According to §§ 4.27.3 and 4.2.5 of the ADAAG, the highest operable parts of dispensers, receptacles, and other equipment shall be 48 inches when floor space allows for only a forward reach. According to photos 41–44

attached to the expert report, the space in the restrooms allow only for a forward reach. Because the highest operable parts of the towel dispensers are above 48 inches above the floor, they are also in violation of the ADAAG.

g. The highest operable parts of the soap dispensers in the restrooms are 47 and 49 inches above the floor. According to photos 45–48, both of the dispensers allow only for a front reach; therefore, the dispenser that is 49 inches above the floor does not conform with the 48 inch maximum provided for in § 4.2.5.

■ Plaintiff has proven that Twin Oaks is in violation of the ADAAG standards, as described above, and that removal of those barriers is readily achievable. Accordingly, the court concludes that Twin Oaks discriminated against her on account of her disability when it failed to remove those barriers.

### 3. Damages

■ Plaintiff requests that the court grant her an award of damages based on the proven architectural barriers. As noted, plaintiffs may recover damages for a violation of § 51. Cal. Civ.Code § 52 provides, in relevant part:

> Whoever denies ... or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

Cal. Civ.Code § 52(a).[4]

■■■■ Defendants challenge plaintiff's ability to recover damages on the ground that she cannot prove actual damages. As the Ninth Circuit has explained, however, "proof of actual damages is not a prerequisite to recovery of statutory minimum damages." *Botosan v. Paul McNally Realty*, 216 F.3d 827, 835 (9th Cir. 2000); *see also Koire v. Metro Car Wash*, 40 Cal.3d 24, 219 Cal.Rptr. 133, 707 P.2d 195, 200 (1985)(Unruh Act "provides for [statutory] damages aside from any actual damages incurred by the plaintiff."). To maintain an action for statutory minimum damages, plaintiff must only show that she was denied full and equal access, and not that she was wholly excluded from enjoying Twin Oaks' services. *Id.* (citing *Donald v. Cafe Royale, Inc.*, 218 Cal. App.3d 168, 266 Cal.Rptr. 804(1990)).

■■■■ Plaintiff asserts that she had difficulty entering the facility and that she was denied the full use of all of Twin Oaks' services. According to her, the disabled parking space was cumbersome because the ramp that projected out into the side aisle made it difficult to stabilize her wheelchair when she got out of her car. Further, the two ramps leading to the entrance were too steep. She also contends that she was unable to use the soap and towel dispensers in the restrooms. Plaintiff's evidence, undisputed by admissible evidence, is sufficient to establish that plaintiff was denied equal access to Twin Oaks and that she is entitled to statutory damages.

Plaintiff asserts that, because the minimum statutory amount is $4,000.00 per violation, and she encountered the architectural barriers a minimum of 15 times, she is entitled to damages in the amount of $60,000. Given that defendant does not present any viable evidence to the contrary,[5] plaintiff will be awarded the statutory minimum of $4,000.00 per violation, totaling $60,000.

## B. THE REHABILITATION ACT

I next examine plaintiff's motion for summary judgment on her Rehabilitation Act claim. Section 504 of the Act codified at 29 U.S.C. §§ 790 *et seq.*, prohibits discrimination against individuals with disabilities by recipients of federal financial assistance. Section 504 provides, in pertinent part, that:

> "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...."

Pub.L. No. 93—112, Title VI § 504 (Sept. 26, 1973) 87 Stat. 94.; 29 U.S.C. § 794(a).

■■■■ To prove that a public program or service violates the Rehabilitation Act, a plaintiff must show: (1) she is an individual with a disability; (2) she is "otherwise qualified" to receive the benefit; (3) she was denied the benefits of the program solely by reason of her disability; and (4)

---

4. Because plaintiff's Unruh Act claim is premised on an ADA violation, she is not required to show intentional discrimination to recover under the Unruh Act. *See Lentini v. California Center for the Arts*, 370 F.3d 837, 847 (9th Cir.2004).

5. Defendant disputes plaintiff's claim that she visited and encountered the barriers at Twin Oaks on fifteen occasions based on an alleged

inconsistency in Hubbard's testimony. During her deposition, plaintiff stated that she did not "remember the *exact* number of times" that she visited her mother at Twin Oaks. Hubbard Depo. at 46:13–15. Plaintiff's declaration states that she visited the subject facility "at *least* 15 different times." Hubbard Decl. at 2. The court determines that there is no inconsistency in plaintiff's testimony.

the program receives federal financial assistance. *Weinreich v. Los Angeles County Metropolitan Transp. Authority,* 114 F.3d 976, 978 (9th Cir.1997). Defendants do not dispute the first two elements but maintain that plaintiff fails to meet the third and fourth elements.

■ Defendants first contend that Twin Oaks does not qualify as a recipient of federal funds by virtue of their receipt of Medicare funds. As I explain below, I cannot agree with defendants' position.

A recipient for purposes of § 504 includes any public or private institution or entity "to which Federal financial assistance is extended directly or through another recipient." 28 C.F.R. § 42.540(e). A plain reading of the language demonstrates that Twin Oaks is a recipient because it received Medicare funds. *See* Def's Oppo. to Mot. for S.J. at 4. Although the Ninth Circuit has not yet ruled on whether Medicare funds qualify as "federal financial assistance," several courts have determined that receipt of such funds does trigger § 504 regulations.

In *United States v. Baylor University Medical Center,* 736 F.2d 1039 (5th Cir. 1984), *cert. denied,* 469 U.S. 1189, 105 S.Ct. 958, 83 L.Ed.2d 964 (1985), the Fifth Circuit engaged in an exhaustive analysis of the legislative history of § 504 and analogous civil rights statutes and their judicial interpretation. Based upon that examination, the court concluded that it "could not excuse from the coverage of Section 504 and its counterparts hospitals that participate in Medicare and Medicaid without frustrating Congress' clear and consistent purpose to protect handicapped persons ... from discrimination in programs receiving federal assistance." *Id.* at 1042. The court also found support for its holding in the Department of Health & Human Service's implementing regulations. Those regulations explicitly provide that Medicare funds constitute " 'federal finan-

cial assistance for Section 504 purposes.' " *Id.* at 1042, 1047 (citing 45 C.F.R. § 80, App. A ¶ 121). Other courts have made similar determinations. *See Doe v. Centinela Hospital,* 1988 WL 81776 (C.D.Cal.1988)(residential alcohol and drug rehabilitation program which received Medicare funds for treatment of some patients was a recipient of federal financial assistance under the Rehabilitation Act); *United States v. University Hosp. Of the State University of New York at Stony Brook,* 575 F.Supp. 607, 612 (E.D.N.Y.1983)(finding it irrelevant to the classification of financial assistance recipient that hospital provided services before receiving Medicare funds rather than after their receipt); *People by Vacco v. Mid Hudson Medical Group, P.C.,* 877 F.Supp. 143 (S.D.N.Y.1995). The court concludes that receipt of Medicare funds is the receipt of federal financial assistance for purposes of § 504, and that Twin Oaks must therefore comply with that section.

■ Plaintiff contends that Twin Oaks violated section 504 by failing to comply with construction standards under the Rehabilitation Act similar to the ADA's ADAAG standards. The Rehabilitation Act's implementing regulations adopt the Uniform Federal Accessibility Standards ("UFAS"), 28 C.F.R. § 42.522(b), found in 41 C.F.R. subpart 101–19.6. Section 42.522(b) provides that, "[e]ffective as of March 7, 1988, ... construction[ ] or alteration of buildings" shall comply with the UFAS. Recipients of existing facilities, like Twin Oaks, must ensure that a "program, when viewed in its entirety, is readily accessible to and usable by handicapped persons." 28 C.F.R. § 42.521(a). That requirement can be met through redesign of equipment, alteration of facilities, or "any other method that results in making [the] program accessible to handicapped persons." 28 C.F.R. § 42.521(b). While de-

fendants are not required to remove all barriers, they are required to remove barriers where such removal is necessary to make a program accessible. *Putnam v. Oakland Sch. Dist.*, 1995 WL 873734 *9–10 (N.D.Cal.1995).

■ Because the UFAS standards regarding slopes of ramps and curbs, curb side-flares, and the restroom towel and soap dispensers are identical to those under the ADAAG, Twin Oaks is also in violation of the UFAS. *See* UFAS § 4.7.2; § 4.7.5; § 4.27.3 and § 4.2.5. Defendants argue that whether or not they are in violation of the Rehabilitation Act, however, plaintiff may not recover damages. I turn to that contention.

■ Section 794a provides, in pertinent part:

"The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 [codified at 42 U.S.C. §§ 2000d et seq.] shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance... under section 794 of this title."

29 U.S.C. § 794a(a)(2). The Ninth Circuit has held that damages are available for violations of the Rehabilitation Act. *Smith v. Barton*, 914 F.2d 1330 (9th Cir.1990) (money damages are available for violations of Section 504); *Aikins v. St. Helena Hosp.*, 843 F.Supp. 1329 (N.D.Cal.1994). In order to recover money damages, "plaintiff must prove intentional discrimination on the part of the defendant." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir.2001)(citing *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998)).[6] To make this showing, plaintiff must prove that defendants were deliber-

ately indifferent by showing that (1) defendants had notice of its duty to act and (2) the failure to act was the "result of conduct that is more than negligent, and involves an element of deliberateness." *Id.* at 1139. Here, defendants had notice of their duty to comply with 28 C.F.R. § 42.521 based on the very existence of the regulation. *Id.* Plaintiff, however, does not present any evidence to show that defendants deliberately failed to act. At most, this court may infer that defendants were negligent in their non-compliance. Accordingly, because plaintiff fails to prove intentional discrimination, the court cannot rule that defendants are liable for damages under the Rehabilitation Act.

## IV.

## CONCLUSION

For all the foregoing reasons, the court hereby ORDERS that plaintiff's motion for partial summary judgment is granted in part and denied in part as follows:

1. Summary judgment is GRANTED as to plaintiff's Unruh Act claim; and

2. Summary judgment is DENIED as to plaintiff's Rehabilitation Act claim.

IT IS SO ORDERED.

---

**6.** The *Duvall* court explained that, because the remedies available under the Rehabilitation Act must "be construed the same as remedies under Title VI of the Civil Rights Act of 1964," plaintiffs may only recover for in-

tentional discrimination. *Duvall*, 260 F.3d at 1139, n. 12 (citing *Alexander v. Sandoval*, 531 U.S. 1049, 121 S.Ct. 652, 148 L.Ed.2d 556 (2000)).