Lynn J. HUBBARD and Barbara Hubbard, Plaintiffs,

v.

RITE AID CORPORATION, et al., Defendants.

No. 02CV2497 WQH.

United States District Court, S.D. California.

May 4, 2006.

Lynn Hubbard, III, Scottlynn J. Hubbard IV, Adam Sorrells, Law Offices of Lynn Hubbard III, Chico, CA for Plaintiff.

Wayne Arnold, Lisa D. Herzog, Hart King and Coldren, Santa Ana, CA, for Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER

HAYES, District Judge.

The matters before the Court are: 1) Defendants' oral motion to dismiss and Defendants' motion to dismiss certain claims (# 202–2); and 2) the Findings of Fact and Conclusions of Law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## BACKGROUND

Plaintiffs Lynn J. Hubbard and Barbara Hubbard filed this action against Defendants Rite Aid Corporation; and Arthur Ciuffo, Jr. and Evelyn Emmerson, Trus-

tees of the Ciuffo Family Trust B. The Complaint seeks declaratory, injunctive and monetary relief pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq;* California Disabled Persons Act; California Unruh Act; California Health and Safety Code § 1955; California Unfair Business Practices Act; and common law negligence. Plaintiffs complaint alleges that Plaintiffs are persons with physical disabilities; that they visited the Rite Aid store located at 1135 Avocado, El Cajon, California ("the Rite Aid store"); and that they encountered discrimination in the form of architectural barriers which make the store inaccessible. Plaintiffs seek injunctive relief in the form of an order requiring Defendants to remove the architectural barriers and statutory damages. Defendants assert that they have made all improvements to the property required by the ADA and related state statutes.

On December 5, 2005, the Court commenced a four day court trial. The following constitute findings of fact and conclusion of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.[1]

## FACTS

The Rite Aid store is located in the Avocado Shopping Center ("the Shopping Center") at the intersection of Chase Street and Avocado Street in El Cajon, California. The Shopping Center includes ten parcels of property. The Rite Aid Store is a located on parcel two which is owned by the Defendant Ciuffo Family Trust B. Parcel two includes the Rite Aid retail store and the portion of the Shopping Center parking lot directly in front of the Rite Aid store. The Ciuffo Family Trust B leases its entire interest in parcel two to the Defendant Rite Aid Corporation which operates the Rite Aid store.

The Rite Aid store is a "place of public accommodation" under 42 U.S.C. § 12181(7)(E) and California Civil Code §§ 54 and 54.1. The Rite Aid store is an existing facility under Title III of the ADA and is a business establishment under California Civil Code §§ 51 and 51.5.

Terra West Investments (Terra West) is the owner of parcels one, three, five, six, seven, eight, nine, and ten of the Shopping Center. Vons is the tenant of the remaining parcel four. Terra West is not a party to this action. In addition to owning eight of the ten parcels in the Shopping Center, Terra West is the operator of the common area charged with the maintenance and repair of the common areas of the Shopping Center. The common areas include all portions of the Shopping Center outside of the buildings. In 1989, the various property owners of the Shopping Center entered into the Amendment and Restatement of Declaration of Establishment of Protective Covenants, Conditions, and Restrictions, and Grants of Easements (hereafter referred to as "the CC & Rs") which provides for an operator of the common area to operate and maintain all improved portions of the common area of the Shopping Center in order to keep the common area in good repair and clean condition. The Rite Aid Corporation pays common area maintenance costs to Terra West Investments for its proportional share of the costs to operate and maintain the common areas for the Shopping Center. Terra West as the common area maintenance operator is responsible for keeping the common areas clean, free of debris and trash, landscaping, basic parking lot maintenance, and lighting maintenance.

---

1. To the extent any findings of fact may be deemed conclusions of law, they shall also be considered conclusions. Similarly, to the extent any conclusions as stated may be deemed as findings, they shall also be considered findings.

There are public sidewalks adjoining the Shopping Center along Avocado Street and Chase Street. The public sidewalks are accessed by an internal common sidewalk that runs along the front of the retail stores. The internal common sidewalk represents the existing path of travel from all stores in the Shopping Center to the public right of way. The path of travel from Chase Street (the public right of way) runs across the internal Shopping Center sidewalk on parcel one (owned by Terra West) continuing across parcel two (owned by Defendant) and parcel three (owned by Terra West).

The Rite Aid store was altered in 1998 at a cost of $1,479,683.00.

The distance between Plaintiffs' home and the Rite Aid store is 20.86 miles. Plaintiffs testified at trial that they visited the Rite Aid store on November 17, 2002 while in El Cajon looking at a scooter. Plaintiff Lynn Hubbard testified that he had problems with the ramp to the store, that the restroom was locked, and that a counter was too high. Lynn Hubbard testified that he attempted to use the restroom but found the door opened hard and the faucets were the wrong kind. Plaintiff Barbara Hubbard testified that they parked at Von's and rode their scooters to the Rite Aid store and that she felt like she was going to tip over on the sidewalk between Von's and Rite Aid. Barbara Hubbard testified that they go to the El Cajon area two or three times a month, that they have been to the Rite Aid store about five times, and that they plan to return to the Rite Aid store while out shopping in the area

Plaintiffs submitted several receipts into evidence showing that they purchased items at the Rite Aid store including foot powder and nasal spray. Lynn Hubbard testified that he thought he tried to purchase an ice cream cone on one visit to the store and would not have been able to complete the purchase without help from his granddaughter because of the high counter.

Plaintiff Barbara Hubbard testified that she sent a letter to the Rite Aid store On December 8, 2002 which stated: "We were at your store recently and could not find van accessible parking. We are in our 80's and use wheel chairs. Please fix this problem at once." Defendants' Exhibit GY.

On December 18, 2002, Plaintiff filed the Complaint in this case.

During the course of these proceedings, Plaintiffs' expert Reed Settle produced an expert report dated February 24, 2004 outlining his opinion regarding the ADA and Title 24 architectural barriers that existed at the Rite Aid store. The initial report by Settle noted 56 architectural barriers. Plaintiffs' Exhibit 6. In March of 2004, Defendants' expert David Musser produced the first of two expert reports for the Defendants regarding the accessibility of the Rite Aid store.

Between November of 2004 and January of 2005, Defendants' expert Musser supervised changes to the interior of the Rite Aid store and exterior portions of parcel two which addressed the accessibility issues raised in the report by Reed Settle. Defendants made modifications to the store and the property which included posting an international symbol of accessibility on the entrance door; providing information on the tow-away signage necessary to reclaim towed vehicles; replacing the curb ramp at the accessible parking stalls with a curb cut and aisle; replacing the accessible symbol at the accessible parking stall; modifying the slope and the flared sides of the built up curb ramp; placing the words "no parking" in the access aisle; modifying the pull side clearance in the men's restroom obstructed by

a trash receptacle; modifying the door clearance in the women's restroom; correcting the door swings in the men's and women's restrooms; attaching the floor mat securely at the entrance of the store; securely wrapping the drain pipes under the sinks in the men's restroom and women's restroom with insulation; modifying the side grab bar in the men's and women's restroom; modifying the dimension from the centerline of the accessible water closet to the side wall in the men's and women's restrooms; modifying the location of the paper towel dispenser, the soap dispenser and the mirror in the women's and the men's restrooms; modifying and adding directional signage to men's and women's restrooms; modifying the height and clear space at the check out stands in the front of the store; and adding a designated accessible check out counter that included complying signage. Amended Pretrial Order, Page 7.

On February 9, 2005, counsel for Defendants informed counsel for Plaintiffs that renovations were completed and that the store could be inspected.

Plaintiffs' expert Reed Settle produced a second expert report dated March 18, 2005 in which he reviewed the modifications made and concluded that 23 of the original 56 architectural barriers remained.

Trial before the Court was scheduled to begin on December 5, 2005.

On the day prior to trial, Defendants moved the Court to continue trial and to dismiss the action on the grounds that Terra West was an indispensable party. Defendants asserted that they had made all improvements required by the ADA to make the store barrier free with the exception of correcting the path of travel to a public right of way and providing the number of accessible parking stalls which could

not be addressed without Terra West joined as a party. The Court denied the request to continue the trial.[2]

Beginning on December 5, 2005, the Court held a four day court trial in which testimony was taken and evidence was presented.

## ANALYSIS

### I. Motion to Dismiss for Failure to Join Indispensable Party

Defendants contend that this action should be dismissed on the grounds that Plaintiffs have failed to join Terra West as a party. Defendants assert that Terra West is indispensable to the resolution of the existing ADA violations in the common area including but not limited to the path of travel, signage, sidewalks, and parking. Defendants explain that Terra West is the owner of Parcels one, three, five, six, seven, eight, nine and ten; as well as the common area maintenance operator. Defendants assert that the renovations necessary to address the ADA violations in the existing sidewalk and the number of parking stalls requires improvements to property owned by Terra West and property in the common area maintained by Terra West. Defendants contend that Terra West should have been brought into this litigation by the Plaintiffs and that this action should be dismissed because Plaintiffs did not join Terra West.

Plaintiffs contend that Terra West is not a necessary party in this action because the majority of alleged violations are on property owned or operated by the Defendants. Plaintiffs contend that Defendants can remedy ADA violations in the common area of the property pursuant to the CC & Rs which apply to the Shopping Center property. Plaintiffs assert that the testi-

**2.** Motion # 202–1 to continue the trial contin- ues to show as pending but is moot.

mony at trial established that the obligations of Terra West in the common area do not include correcting violations of the ADA or related state statutes on parcel two owned and operated by the Defendants. Plaintiffs further assert that injunctive relief is available to remedy violations of the ADA inside the store without joining Terra West.

■ Joinder under Rule 19 of the Federal Rules of Civil Procedure is the exception to the general rule that a plaintiff is ordinarily free to decide who shall be parties to a lawsuit. *Simpson v. Alaska State Commission for Human Rights,* 608 F.2d 1171, 1174 (9th Cir.1979); 7 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1602, p. 17 (1972). Plaintiff's choice is compromised when significant countervailing considerations make joinder of particular absentees necessary or desirable. *See Illinois Brick Co. v. State of Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977). "[I]t is defendant's responsibility in the first instance to raise these considerations underlying rules 19 and 20. Failure to join indispensable parties does not oust jurisdiction." *Simpson,* 608 F.2d at 1174 n. 4.

■ Joinder under Rule 19 entails a practical two-step inquiry. First, the court must determine whether an absent party should be joined as a "necessary party" under subsection (a). Second, if the court concludes that the nonparty is necessary and cannot be joined for practical or jurisdictional reasons, the court must then determine under subsection (b) whether in "equity and good conscience" the action should be dismissed because the nonparty is "indispensable." Rule 19(b); *Northrop Corp. v. McDonnell Douglas Corp.,* 705 F.2d 1030, 1043 (9th Cir.1983). Under Rule 19(a), a party is deemed "necessary" if complete relief cannot be granted in its absence. In conducting the Rule 19(a) analysis, the court asks whether the absence of the party would preclude the district court from fashioning meaningful relief as between the parties. *Id.*

In *Disabled Rights Action Committee v. Las Vegas Events, Inc.,* 375 F.3d 861 (9th Cir.2004), plaintiffs brought an action under the ADA alleging that disabled persons had been subjected to discriminatory access to the Nationals Finals Rodeo. Defendants were private entities which staged the rodeo at a arena in Las Vegas publicly owned by the University System, a sub-entity of the State of Nevada. Defendants moved to join the University System as a necessary party pursuant to Rule 19. The district court concluded that the University System was a necessary and indispensable party because it was the entity that owned and operated the arena. The district court concluded that complete relief among existing parties was not possible because the enforcement of any judgment would require the cooperation of the University System. The district court dismissed the action against the private entities on the grounds that the arena was owned by a public entity and not a place of public accommodation under the ADA. The court further concluded that the University System as an entity of the State of Nevada could not be sued under Title III of the ADA.

The Court of Appeals reversed and remanded concluding that the private entities may be liable under the ADA on the grounds that they operate the arena, and that the University System was not a necessary party under Rule 19(a). The Court of Appeals explained that "[i]t is important to consider that the maximum relief available with respect to the removal of architectural or communications barriers under Title III is limited to those steps that are 'readily achievable' by the covered entity."

*Id.* at 879 citing 42 U.S.C. §§ 12182(b)(2)(A)(iv) & (v), 12181(9). The Court of Appeals noted that "the district court entirely failed to consider whether remedies not requiring University System's cooperation would provide meaningful relief." *Id.* The Court of Appeals explained that "the private defendants' Title III obligation would be determined with respect to the short term nature of its relationship with the Center, among other considerations and 'complete relief' under the statute may not necessarily mean the achievement of a fully accessible stadium." *Id.* at 880. The Court of Appeals considered the limitations of the leasing agreement between the private entities and the public owner noting that the lease "does not prevent [the private entities] from taking action to make the Rodeo accessible to the degree possible within the scope of its lease or, in the alternative, from holding the Rodeo at an accessible venue." *Id.* The Court of Appeals found that the district court could grant meaningful relief by enjoining the private entities from making "certain kinds of operational decisions regarding conditions over which they have control." *Id.* The Court of Appeals determined that "the district court abused its discretion" concluding the University System a necessary party under Rule 19(a)(1). *Id.*

The Complaint in this case seeks "injunctive relief, compelling Defendants to remove architectural barriers at the Store, that are structural in nature, where such removal is readily achievable." Plaintiff's Complaint, page 23. Defendants conceded prior to trial that the path of travel to the public right of way and that the parking spaces on parcel two and on the entire Shopping Center property do not comply with ADA requirements. Defendants contend that these violations are the only issues remaining and that meaningful relief cannot be granted as to the path of travel and parking spaces in the absence of Terra West.

The Court concludes that Defendants are responsible for ADA compliance on parcel two. The evidence at trial established that Terra West as the common area operator is responsible for cleaning, landscaping and basic maintenance of the sidewalk and the parking lot but that improvements to Parcel two required in order to comply with the ADA remain the responsibility of the owner and the operator. There was no evidence presented at trial that Terra West was responsible as the operator of the common area for remediating the conditions of parcel two in the common area which violate the ADA. The Terra West representative testified that Terra West as the owner of Parcel one and Parcel three would be required to cooperate with Defendants as the owners of Parcel two but that the common area operator does not include responsibility for the improvements required under the ADA.

While the Court takes into consideration the nature and circumstances surrounding the path of travel and parking space violations in deciding whether compliance with the ADA is readily achievable, the Court does not find that meaningful relief is not possible such that Terra West is a necessary party under Rule 19(a). The Court in *Las Vegas Events* explained that a party's obligation under Title III is determined with respect to the nature and circumstances of its relationship with the property among other considerations and "complete relief under the statute may not necessarily mean the achievement of a fully accessible [property]." 375 F.3d at 880. The fact that Terra West owns parcel one and parcel three and maintains the common areas does not prevent Defendants from taking action to make the store ac-

cessible to the degree possible. The issues remaining for trial in this case included ADA violations inside the store which did not require any participation from Terra West as well as violations of the ADA in the common area of parcel two. Defendants are not entitled dismissal of this action pursuant to Rule 19 on the grounds that no meaningful relief can be granted absent Terra West.[3] The Defendants' oral motion to dismiss and Defendants' motion to dismiss certain claims (# 202–2) are denied.

## II. The Americans with Disabilities Act

■ Plaintiffs seek injunctive relief against Defendants based upon the denial of access to the Rite Aid store and surrounding site in violation of the ADA. Title III of the ADA prohibits discrimination against persons with disabilities in places of public accommodation. *See* 42 U.S.C. § 12182(a). The ADA defines discrimination to include "the failure to remove architectural barriers" in existing facilities where such removal is "readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). The ADA authorizes only injunctive relief for disabled individuals who suffer prohibited discrimination and does not provide for the recovery of monetary damages by private individuals. *See* 42 U.S.C. § 12188(a)(2); *Pickern v. Holiday Quality Foods, Inc.,* 293 F.3d 1133, 1136 (9th Cir. 2002).

■ In order to prevail under the ADA Plaintiffs must prove that 1) they are disabled under the ADA, 2) that the Rite Aid store contains architectural barriers prohibited by the ADA, and 3) that the removal of those barriers is readily achievable. 42 U.S.C. § 12183(a)(2). Plaintiff bears the burden of proving the existence of an

architectural barrier and suggesting a method of removing the barrier that is "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9). See *Pascuiti v. New York Yankees,* 1999 WL 1102748 (S.D.N.Y.1999). If Plaintiff satisfies this burden, the Defendants then bear the ultimate burden of proving that the suggested method of removal is not readily achievable. 42 U.S.C. § 12182(b)(2)(A)(v).

Title III gives the Department of Justice authority to develop regulations implementing the requirements of the ADA. 42 U.S.C. § 12186(b). The ADA Accessibility Guidelines ("ADAAG") are codified at 28 C.F.R. Pt. 36, Appendix A. 28 C.F.R. § 36.402(a) provides that "any alteration to a place of public accommodation ... after January 26, 1992, shall be made so as to ensure that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs." Rite Aid undertook an extensive remodel of the store in 1998 which triggered the accessibility requirements of Title III. *See* 42 U.S.C. 12183(a)(2); 28 C.F.R. § 36.402, 28 C.F.R. § 36.406.

### *Standing—Disability*

Defendants contend that Plaintiffs lack standing because Lynn Hubbard and Barbara Hubbard were not disabled at the time the Complaint was filed. Defendants admit that the Plaintiffs have a number of medical conditions but assert that there is no evidence that any of these conditions have resulted in disability as defined by the ADA. Defendants contends that Lynn Hubbard's testimony that he had limitations in his ability to walk because of knee

---

**3.** Even if the Court found Terra West a necessary party under Rule 19(a), there is no showing that Terra West could not be made a party

and that "in equity and good conscience," the action should be dismissed under Rule 19(b).

problems and shortness of breath is not credible. Defendants point to Lynn Hubbard's testimony that he can currently walk slowly, that he can go up stairs if there were things to hold on to, and that his shortness of breath was helped by a new pacemaker. Defendants contend that the evidence does not establish Barbara Hubbard's limitations on walking at the time of her initial visit to Rite Aid on November 17, 2002 and that her condition in 2004 could have been vastly deteriorated from her condition in 2002. Defendants rely upon the testimony of the Plaintiffs as to their limitations, the video presented by the Defendants, and the testimony of their expert witness Dr. Mark Rosenthal.

Plaintiffs contends that the evidence at trial established that they are substantially limited in their ability to walk, run, stand, use the bathroom, hear, and breathe. Plaintiffs contends that their testimony, the video introduced into evidence by the Defendants, and the medical records establish that they are substantially limited in numerous life activities as required by the ADA. Plaintiffs contends that testimony of Defendants' medical expert that the medical records do not contain an evaluation of the Plaintiffs ability to perform the activities of daily living does not support his conclusion that the Plaintiffs are not disabled.

The ADA defines an individual with a disability as someone who has a physical or mental impairment that substantially limits one or more of his or her major life activities. 42 U.S.C. § 12102(2)(A). "Substantially limited" means that an individual is either unable to perform a major life activity that the average person in the general population can perform or is significantly restricted as to the condition, manner or duration under which the individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j). "Major life activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." *Id.* at § 1630.2(i). The determination of whether an individual is substantially limited in a major life activity must be made on a case by case basis, without regard to mitigating measures such as medicines, or assistive or prosthetic devices. *Id.* at § 1630.2(j); *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 2145, 144 L.Ed.2d 450 (1999).

Plaintiffs presented the testimony at trial of Lisa Williams, a licensed Nurse Practitioner in Arizona. Williams reviewed Plaintiffs' medical records and physical therapy reports and testified that Plaintiffs were substantially limited in daily activities. Defendants contend that the Court should exclude the testimony of Lisa Williams because she does not possess sufficient scientific, technical or other specialized knowledge, skill, training or education to assist the Court to determine whether the Plaintiffs are disabled. Defendants contends that Williams has been a licensed Nurse Practitioner in Arizona for a short time; that her primary expertise is in dermatology; and that she has little experience in evaluating mobility of geriatric or disabled individuals.

Rule 702 states as follows:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable

principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The trial judge must find that expert testimony is "properly grounded, well-reasoned and not speculative before it can be admitted." Fed.R.Evid. 702, Advisory Committee Notes (2000). The proponent of expert testimony has the burden of proving the factual prerequisites necessary to the admissibility of expert testimony by a preponderance of the evidence. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); Fed R. Evid. 702, Committee Note (2000).

[redacted] The Court concludes that the testimony of Lisa Williams is not of assistance to the trier of fact. The training and experience of the witness and her asserted specialized knowledge are not sufficiently related to the issues and evidence before the trier of fact. Williams is a nurse with her primary expertise in dermatology. Williams has no specialized knowledge or training to render an opinion as to whether Plaintiffs are disabled under the definition provided by the ADA.[4] Defendants' motion # 160 to exclude Williams' testimony is granted. Defendant's motion # 157 to exclude Williams' supplemental report was granted at trial.

Plaintiff Lynn Hubbard testified at trial that he is 84 years old; that he has had problems with his knees for a number of years; that he first started using a cane about five years ago; and first bought a scooter about ten years ago to travel distances. Lynn Hubbard testified that he can currently walk slowly and that he does not do stairs. Lynn Hubbard testified that he is under the care of a number of doctors including a urologist, a foot doctor, and a cardiologist; that he has had problems with shortness of breath; that he has had two heart surgeries including six way bypass surgery in 2000; and that he had his pacemaker replaced recently which has helped his shortness of breath.

Plaintiff Barbara Hubbard testified at trial that she is 83 years old; that she started to have swelling in her legs and pain in her knees about twenty years ago; that she first started using an assistive device to help her walk about ten years ago; and that she has been unable to walk or stand since April 2005 because of pain in her back and knees and swelling in her legs. Barbara Hubbard testified that in 2002 she could walk short distances using a cane and that she has had constant difficulty going up and down stairs.

The Court finds that the testimony of Lynn Hubbard and Barbara Hubbard is consistent with the level of activity observed in the video presented into evidence by the Defendants as well as the medical evidence presented by the Defendants expert witness. Defendants' medical expert Dr. Mark Rosenthal testified that he is a geriatrician and that he had reviewed the medical records of Lynn Hubbard and Barbara Hubbard looking for medical problems that he thought severe enough to cause disability. Rosenthal testified that the medical records show that Lynn Hubbard has received medical treatments for heart condition, gastrointestinal reflux, prostrate cancer, cataracts, arthritis aortic aneurism, compression fracture and lumbar spine degenerative disc disease. Rosenthal testified that each of these conditions was potentially disabling but that these conditions would not limit or impair

4. Even if the Court did not exclude Williams testimony, her testimony would not effect the outcome of the case because the Court would give her testimony little or no weight for lack of credibility. Since the Court finds that the Plaintiffs have proven that they are disabled, excluding Williams expert testimony has no effect on the outcome of the case.

Lynn Hubbard's ability to participate in any major life activity or qualify him as being disabled under any federal or state definitions. Testimony of Rosenthal, Trial Transcript page 495.

Rosenthal testified that the medical records show that Barbara Hubbard has received medical treatments for cancer, bladder problems, osteoarthritis in both knees, arthritis, rotator cuff difficulties, hypertension, cataracts, lung disease, degenerative changes in the spine, painful shoulders, and pulmonary disease. Rosenthal testified that he did not see any documentation in the medical records which would support the use of a motor scooter to ambulate or the issuance of a disabled parking placard.[5] Rosenthal concluded that the medical records did not show a disabling condition per se and did show that there may have been some possible changes in her conditions. Rosenthal concluded that a more detailed evaluation in a more confined clinical form would be required in order to determine whether Barbara Hubbard has impaired functional capacity in any major life activity. Testimony of Rosenthal, Trial Transcript, page 514.

██ The Court concludes that the Plaintiffs have presented evidence sufficient to establish that they have physical impairments that substantially limit one or more major life activities including walking and caring for one's self. The evidence at trial established that Lynn Hubbard and Barbara Hubbard are in their eighties and suffered from a number of significant medical conditions in 2002 that substantially impair functional capacity in major life activities. Plaintiffs used wheel chairs and scooters to get around, and drove themselves in an accessible van with a disabled placard well prior to 2002 because of physical impairments that limited their ability to walk significant distances. Dr. Rosenthal testified from a review of the medical records that each of the Plaintiff's medical conditions could cause significant disability; that in Lynn Hubbard's case the medical conditions do not cause disability; and that in Barbara Hubbard's case more evaluation is necessary. Defendants presented a video taken of the Plaintiffs while unaware that they were being filmed which showed Barbara Hubbard walking very slowly with an unsteady gait, using a cane, and gripping the van to her assist with support and balance and Lynn Hubbard walking slowly and with an unsteady gait. The Court concludes that testimony of the Plaintiffs, the medical records, and the Defendants' video are adequate evidence to establish that Plaintiffs are disabled under the ADA.[6]

### Standing—past visits and threat of future harm

██ To establish standing under the ADA, plaintiffs must demonstrate that they have suffered an injury in fact, that the injury is traceable to the challenged action of the Defendant and that the injury can be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 564, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In the ADA context, in determining the likelihood that a plaintiff will return to defendant's facility, courts have examined such factors as (1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past pa-

5. Defense expert Dr. Rosenthal testified at trial that the fact that someone has been issued a disabled parking placard is not an indication that they are medically disabled "because I issue them to a lot of patients who are not disabled." Trial Transcript page 503.

6. Plaintiff's Motion to prevent testimony or evidence regarding (in)accessibility of plaintiffs' home # 188 is moot.

tronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant. *Pickern v. Holiday Quality Foods, Inc.,* 293 F.3d 1133, 1137 (9th Cir.2002); *Molski v. Arby's Huntington Beach,* 359 F.Supp.2d 938 (C.D.Cal.2005).

 The evidence presented at trial established that Plaintiffs were in El Cajon approximately twenty miles from their home shopping for scooters; that Plaintiffs had visited El Cajon a number of times; that Plaintiff stopped to shop at the Rite Aid store in El Cajon to shop for nasal spray and foot powder; and that Plaintiffs intend to return to shop at the store. The Court finds that Plaintiffs have presented evidence sufficient to establish their visits to a store twenty miles from their home and their intention to return and that Plaintiffs have standing to challenge the architectural barriers in the interior and exterior of the store which interfered with their visit.

### Remaining ADA violations

Defendants presented the expert testimony of David Musser a licensed architect with almost 30 years of experience regarding the architectural barriers on the property. Musser testified that he visited the store on eight to ten occasions to identify areas of concern and to inspect the progress of renovations and supervise the work of the general contractor which began in November of 2004 until the work was completed. Musser testified that last changes were made several weeks before trial. Trial Transcript page 560. Musser produced two expert reports dated March 19, 2004 and May 31, 2005. Musser testified at trial that violations of the ADA requirements remain on the property in the path

of travel to the public right of way and the number of accessible parking stalls.

Plaintiffs presented the expert testimony at trial of Reed Settle a licensed architect who inspected the property and produced two reports dated February 24, 2004 and March 18, 2005. Plaintiffs contends that the evidence presented at trial established that the following architectural barriers remain: 1) number of accessible parking spaces, 2) path of travel to the public right of way, 3) tow away signage, 4) ice cream counter, 5) grab bars, 6) aisles, 7) garbage can obstruction, 8) toilet paper dispenser, 9) parking space slope, and 10) p-trap wrapping.[7] Plaintiffs contend that these violations of the ADAAG requirements are architectural barriers that disabled access laws were designed to remedy, that each of these violations can be remedied by these Defendants, and that the Court should order Defendants to remedy these violations.

### 1. Number of Accessible Parking Spaces

The evidence at trial showed that there are two accessible parking stalls in front of the Rite Aid store on parcel two which currently meet the ADAAG requirements in their configuration and signage and a number of other accessible parking stalls distributed throughout the Shopping Center some of which do not currently meet the ADAAG requirements.

Plaintiffs' expert Reed Settle testified at trial that there are 99 parking stalls including two accessible stalls on parcel two, the portion of the shopping center parking lot owned and controlled by Defendants. Settle testified that under the state and federal regulations 76 to 100 parking stalls

---

7. These violations are set forth in the Plaintiffs' Second Proposed Findings of Fact and

Conclusions of Law at pages 58—62.

requires 4 accessible stalls. See ADAAG 4.1.2(5)(a). Settle testified that he did not consider the number of spaces throughout the parking lot for the entire center.

Defense expert Musser testified that the Shopping Center has 677 parking stalls including the designated disabled stalls on the Shopping Center site. Using the ADAGG chart, Musser determined that there should be 14 disabled accessible stalls on the Shopping Center site. Musser testified that there are currently ten accessible stalls in the Shopping Center site. Musser testified that he did not count the number of parking stalls separately for parcel two because the parking lot was submitted to the City as a continuous parking lot and the Shopping Center parking lot could only be viewed as a whole unit in order to distribute the additional spaces throughout the Shopping Center. Musser testified that Section 4.6 of the ADAGG requires that the parking be as close as practical to the accessible entrances of the stores that are served by it and that the accessible parking would need to be distributed throughout the Shopping Center site because the entire shopping center is required to be accessible. Musser testified the Shopping Center parking lot was "short four" but that the additional parking spaces should be placed on parcels other than parcel two so that satellite buildings in the Shopping Center would have disabled parking. Trial Transcript, page 581. Musser testified that the shortage of parking spaces is based on the site plan that was submitted for the improvement of the site at the creation of the shopping center back in 1988. There are actually on the site now buildings in addition to what this site plan shows, and the parking has been reconfigured. There probably are more—currently on the site more than 14 accessible parking spaces, although most of them still are not in compliance with current requirements. Trial Transcript, page 657.

Defense expert Musser testified that one stall is lost for every pair of accessible parking spaces. Trial Transcript, page 583. The Terra West representative testified at trial that Rite Aid would need the approval of Terra West as one of the shopping center owners to change the number of parking stalls and that Terra West would not withhold permission for the addition of two accessible stalls if it did not change the traffic flow. Trial Transcript, page 301–315. There was no evidence presented at trial that the Shopping Center had any plans to address the violations of federal disability regulations or that Defendants would be prevented by other owners of parcels in the Shopping Center or the common area operator from conforming parcel two to federal regulations by adding two accessible parking stalls on parcel two.

Defendants concede that the number of parking spaces for the Shopping Center is not ADA compliant. The evidence at trial established that number of accessible parking stalls for the parcel two is not ADA compliant, that the number of accessible parking stalls for the Shopping Center is not ADA compliant, and that the requirements of the ADA are readily achievable as to parcel two and the Shopping Center.

## 2. Path of Travel to the Public Right of Way

ADAAG regulations require that the accessible entry to the store be connected by a conforming path of travel all of the way out to some aspect of the public right of way. ADAAG §§ 4.1.2(1) and 4.3.2(1). The parties agree that the sidewalk in front of the Rite Aid store is the path of travel to the public right of way. Defen-

dants agree that the path of travel to the public right of way for the Shopping Center is not in compliance with the ADA requirements.

The evidence at trial showed that the path of travel from the public right of way at the Shopping Center has slope issues starting on parcel one, going through parcel two, and continuing on to parcel three. Under ADAAG requirements, the existing path of travel exceeds a five percent slope in the direction of travel, and qualifies as a ramp which would require guard rails and an adjustment to the slope. The evidence at trial further established that the cross slope on the sidewalk exceeds the maximum allowable cross slope of two percent. Defendants' expert witness Musser testified that he "recommended that the complete path of travel from the public sidewalk on Chase Street up to the front doors of the Rite Aid store be corrected and adjusted to make it compliant with the cooperation of the adjacent property owners." Trial Transcript, page 642.

 The Court concludes that the path of travel to the public right of way on parcel two owned and operated by Defendants is not in compliance with ADA requirements and is not accessible. The evidence at trial established that the sidewalk can be fixed but that the slope problems on the sidewalk in front of parcel two cannot be corrected independent of and without correcting the slope problems on parcel one and parcel three. Any correction to slope problems on parcel two without correcting the slope on parcel one and parcel three would create elevation and

tripping problems and further violations of the ADA requirements.

### 3. Tow away signage

The evidence at trial established that Defendants have complied with the ADAAG requirement that there be a warning sign at each entry of the shopping Center stating that unauthorized vehicles parked in designated accessible spaces not displaying placards or license plates for persons with disabilities may be towed away at the owner's expense and the location that vehicles can be reclaimed or a telephone number to reclaim the vehicle. Trial Transcript of Musser, page 578–579.

### 4. Ice cream counter

Defendants concede that the ice cream counter does not meet the accessibility requirements for a food service counter but contend that the ice cream counter is compliant because the Court should treat the ice cream counter as a vending machine.[8] Defendants explain that modification were made to the hand dip ice cream counter in order to comply with the vending machine accessibility rules ADAAG §§ 4.2.5, 4.2.6, and 4.27.4. Defendants' expert Musser testified that Rite Aid uses a freezer case arrangement that does not provide the accessibility required by a food service counter and that "there is not enough room in the store to put a counter on either end of it that would be an acceptable service counter." Trial Transcript of Musser, page 598. Musser testified that modifications were made to the ice cream

---

8. Defendants further assert that the ice cream counter has been modified to the maximum extent feasible. The standard "to the maximum extent feasible" only applies to "the occasional case where the nature of an existing facility makes it virtually impossible to comply" with accessibility standards. 28 C.F.R. § 36.402(c). This regulation further provides that "Any altered features of the facility that can be made accessible shall be made accessible." 28 C.F.R. § 36.402(c). The Court concludes that "to the maximum extent feasible" is not the appropriate standard to apply to the ice cream counter in this case.

case so that there was a pass through area 34 inches high and that the station was made cash only in an effort to approach the ice cream counter as a vending machine for the purposes of ADA compliance. Defendant expert Musser testified that the ice cream counter is a food service counter, that "you are dealing with a real person as opposed to a coin machine," and that passing cash to the ice cream scooper is a transaction. *Id.* at page 678–679.

Plaintiffs contend that Defendants cannot avoid the responsibilities of the ADA by naming the counter where transactions occur a vending machine when it is not a vending machine. Plaintiff contend that Defendants should be required to widen the counter to 36 inches to provide accessibility.

■ ADAAG § 7.2(1) provides that a service counter must have a section of counter that is at least 36 inches in length with a maximum height of 36 inches. The Court concludes that Defendants cannot avoid the accessibility requirements for a food service counter by complying with the accessibility requirements for a vending machine. A vending machine is a coin operated machine that dispenses merchandise. The ice cream counter in the store is a food service counter where a person employed by the store provides food to a customer. The Court concludes that the accessibility requirements for a vending machine do not apply to the food service counter. There was no evidence presented at trial that the Defendants could not replace the ice cream case with an accessible service counter. Defendants made no claim of or presented any evidence of any financial inability to replace the ice cream case with an accessible arrangement.

### 5. Grab bars

Plaintiffs assert that the grab bar in the restrooms are mounted 331/2 inches from the floor in violation of the ADAAG. ADAAG § 4.17.6 requires that grab bars located in the accessible toilet stall shall be 33 inches above and parallel to the floor. The ADAGG regulations applicable for a tank type toilet provides that for grab bar in the range of 33 to 36 inches from the floor. ADAAG § 4.17.6 Figure 30(d). The evidence at trial showed that the grab bars complied with the regulations. Trial Transcript of Settle, page 66.

### 6. Aisles

Plaintiffs contend that the store has some aisles that were 36 inches wide and promised the City that the aisles within the store would be 42 inches. Plaintiffs contend that 36 inch aisles violated the California Building Code and ignored Defendants' obligations.

The Amended Pretrial Order and the expert report by Reed Settle do not identify the aisle width as a violation of the ADA. There is no evidence in the trial record to support any violation of the ADA based upon the aisle width in the Rite Aid store.

### 7. Garbage can obstruction

Plaintiffs contend that the store is in violation of ADAAG §§ 4.13.6 because the strike side clearance for the door swings in the restrooms is obstructed by a garbage receptacle. Plaintiffs assert that an injunction requiring the store to maintain a clear floor space is necessary because the garbage can is a removable item and Rite Aid can bring it back whenever it chooses.

The first expert report of Reed Settle dated February 24, 2004 identified as an architectural barrier the strike side clearance of door in the men's restroom and the women's restroom obstructed by a trash receptacle. Plaintiffs' Exhibit 6, §§ 5.1 and 5.4. Settle's second expert report dat-

ed March 18, 2005 notes the issues with the door clearance were complete as of 3/17/05. Plaintiff's Exhibit 6a, §§ 5.1 and 5.4. There was no evidence presented at trial that this violation existed at the time of the trial.

### 8. Toilet paper dispenser

Plaintiffs contends that the toilet paper dispenser in the restroom projects more than 4 inches in violation of ADAAG § 4.4.1. The Amended Pretrial Order and the expert report by Reed Settle do not identify the the projection of the toilet paper dispenser as a violation of the ADA. There was no evidence in the trial record to support any violation of the ADA based upon the projection of the toilet paper dispenser in the Rite Aid store. The evidence at trial established that the toilet paper dispenser complied with the requirements of ADAAG § 4.16.6 Figure 29(b) which does not include a dimensional clearance requirement. Trial Transcript of Musser, page 622.

### 9. Parking space slope

Plaintiffs contends that the slope of the accessible parking stalls and aisle directly in front of the store may exceed 2.0% in violation of ADAAG § 4.6.3. The evidence presented at trial established that the two accessible parking stalls and aisles on parcel two are in conformance with slope requirements. Trial Transcript of Musser, pages 584–585.

### 10. P-trap wrapping

The evidence presented at trial established that the hot water and drain pipes under the lavatories were insulated or otherwise covered to comply with ADAAG § 4.19.4. Trial Transcript of Musser, page 604.

### *Readily Achievable*

Prior to trial, Defendants hired a licensed architect to assess the accessibility of the store and to work with a contractor in correcting deficiencies which were present on the property. Musser testified that his "initial conclusion was that the store was generally accessible; however, technically not in compliance in a number of areas." Trial Transcript, page 565. Musser supervised significant modifications to the store and the property in order to comply with the accessibility regulations. The renovations took over a year to be completed and included significant modifications to the interior and the exterior of property; such as the height of the check stand counters, replacing the curb ramp at the accessible parking stalls with a curb cut and aisle, and significant modifications to the accessibility of the restrooms. Musser testified that there were "a lot of deficiencies in the men's and women's rest rooms" which were corrected including the door swings were in the wrong direction, and the height of the lavatories and the urinal were incorrect. *Id.* at 673. Musser testified that violations of the ADA remained in the path of travel to the public right of way and the number of accessible parking stalls. Musser testified at trial that he "recommended that the complete path of travel from the public sidewalk on Chase Street up to the front doors of the Rite Aid store be corrected and adjusted to make it compliant with the cooperation of the adjacent property owners." *Id.* at 642.

Defendants are required to remove barriers to accessibility to the extent that such removal is "readily achievable". 42 U.S.C. § 12182(b)(2)(A)(iv). *See Long v. Coast Resorts, Inc.,* 267 F.3d 918, 923 (9th Cir.2001). An action is "readily achievable" if it is "easily accomplishable and able to be carried out without much diffi-

culty or expense." 42 U.S.C. § 12181(9). In determining whether an action is "readily achievable," the following four factors are considered: A) the nature and cost of the action needed under this chapter; B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility; C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity. *Id.* Defendants bear the ultimate burden of proving that removal is not readily achievable. 42 U.S.C. § 12182(b)(2)(A)(v). *See Pascuiti v. New York Yankees,* 1999 WL 1102748 (S.D.N.Y. 1999).

Whether a specific change is readily achievable "is a fact intensive inquiry." *Access Now v. South Florida Stadium Corp.,* 161 F.Supp.2d 1357, 1371(S.D.Fla.2001). In *Alford v. City of Cannon Beach,* 2002 WL 31439173 (D.Or. 2002), Plaintiffs alleged ADA violations against two small businesses the Bistro Restaurant and the Wine Shop which shared access by a brick path through a common area. The defendants submitted evidence that a proposed ramp would cost over seventy-four percent of the annual net profit of the small restaurant business and would require the restaurant to be closed for three days to support its assertion that the installation of a permanent ramp was not readily achievable given the

expense and the impact on the operations of the business. The district court reviewed the cost of a number of permanent or portable ramps and concluded that the ramp proposals were not readily accessible based upon the "nature and cost of the action to remove the architectural barrier leading to the Wine Shop and the overall financial resource of the Wine Shop." *Id.* at 13. The district court concluded that the problems with the proposed ramps included the failure to fully address costs required to eliminate the access problems and the lack of detail demonstrating feasibility. The district court concluded that "even for those proposals that are feasible and financially readily achievable, plaintiffs are not entitled to the relief they seek without having brought this action against the landlord and anyone else with rights to the common area such as the flower shop, as well as the Bistro and the Wine Shop." *Id.* at 15. The district court found that "all of the proposed ramps go beyond the leased premises and intrude into the common area" and concluded "while the landlord, technically speaking, may not be an indispensable party to this suit, *see* Fed. Rule of Civil Procedure 19, I cannot order the Bistro and the Wine Shop to embark upon construction which could potentially violate the terms of their leases." *Id.*

In *Parr v. L&L Drive–Inn Restaurant,* 96 F.Supp.2d 1065 (D.Hi.2000), the district court concluded that the removal of architectural barriers relating to an entrance ramp and exterior route to restaurant was readily achievable. The district court concluded that "correcting these barriers would merely involve some asphalt and some planning." *Id.* at 1088. The district court concluded that relocating the accessible parking space from the far lefthand corner of the parking lot which did not provide the shortest route to the entrance was not readily achievable. The district court explained "[a]lthough the actual cost

of relocating the parking space would just involve restriping the parking area, the . . . problems clearly outweigh the benefits of this modification." *Id.* at 1089. The district court relied upon the evidence presented that the drive-in restaurant shared the parking lot with other commercial tenants; that the parking lot has a very limited number of spaces; and that relocating the accessible parking space would force the restaurant to lose a parking space.

Defendants in the case before this court were aware of the accessibility problems with the path of travel to the public right of way, the number of parking spaces, and the ice cream counter prior to trial and asserted at trial that they were not required to fix these problems. Defendants made no claim of financial hardship or financial inability to correct any of these violations. Defendants presented no evidence as to their overall financial resources or the cost of restriping the parking stalls or replacing the ice cream freezer. Defendant's sole defenses at trial were compliance with the vending machine requirements, and the lack of control over the common areas and property of the adjacent property owners.

█ There was no evidence presented at trial from which the Court could conclude that restriping the parking spaces and replacing the ice cream freezer could not be accomplished without much difficulty or expense. The Court concludes that correcting the accessibility of the ice cream counter and adding two accessible parking stalls to comply with ADA regulations is readily achievable because these actions can be accomplished "without much difficulty or expense." 42 U.S.C. § 12181(9). Defendant's expert testified that adding two parking spaces would involve restriping and signing and that "typically for every pair of accessible spaces you lose one space." Trial Transcript of Musser, page 582–583. Defendants did not attempt to show that they cannot add two accessible parking spaces on parcel two and argued only that it would be better for the Shopping Center if the additional accessible spaces were in a location other than on parcel two. There was no evidence at trial that any efforts had been undertaken to bring the Shopping Center as a whole into compliance. Defendants simply argued that they should not be required to bring the entire Shopping Center or parcel two into compliance with the ADA requirements. While the Court cannot order the Defendants to bring the entire Shopping Center into compliance with the ADA, the Court can order the Defendants to bring parcel two into compliance with the number of parking stalls required by the ADA.

█ The Court concludes that Plaintiffs have not carried the burden to suggest a "readily achievable" method of correcting the barriers on parcel two of the Shopping Center presented by the path of travel to the public right of way. The evidence at trial established convincingly that the Defendants cannot correct the slope problems on parcel two owned and operated by the Defendants without correcting the slope problems on parcel one and parcel three owned by Terra West and that Rite Aid cannot alter the path of travel on property it does not own or otherwise control. The evidence at trial further showed that any attempt by Defendant to correct the path of travel on parcel two independent of renovations on parcel one and parcel three would create elevation and tripping problems on parcel one and parcel three. The Court will not order Defendants to remove an architectural barrier on their own property which will create accessibility hazards on the adjacent property and the Court cannot order the Defendants in this case to alter the

path of travel on property that Defendants do not own or operate. This Court can only order injunctive relief and Plaintiffs have not shown any effective injunctive relief is available under the facts of this case to remedy the problems with the path of travel to the public right of way.

### III. State law claims

 Section 51 of the Unruh Civil Rights Act provides in relevant part that "a violation of the right of any individual under the Americans with Disabilities Act of 1990 ... shall constitute a violation of this section." Section 52 of the Act provides a damage remedy for violations of Section 51 in part as follows: "Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51 ... is liable for each and every offense for the actual damages, and any amount that may be determined by a jury or a court sitting without a jury ... up to a maximum of three times the amount of actual damages but in no case less than four thousand dollars ...." Proof of actual damages is not a prerequisite to recovery of statutory minimum damages. *Botosan v. Paul McNally Realty*, 216 F.3d 827, 835 (9th Cir.2000). To maintain an action for statutory damages, plaintiffs must only show that they were denied full access and not that they were wholly excluded from enjoying Defendants' services. *See e.g. Hubbard v. Twin Oaks Health and Rehabilitation Center*, 408 F.Supp.2d 923, 932 (E.D.Cal.2004); *Donald v. Café Royale, Inc.*, 218 Cal.App.3d 168, 266 Cal.Rptr. 804 (1990).

 Plaintiffs contends that they encountered architectural barriers at the Rite Aid store a minimum of four times and were deterred from visiting the store a fifth time. Plaintiffs assert that they are each entitled to statutory damages of $4,000.00 for four actual visits and one incident of deterrence for a total of $40,000.00.

Plaintiffs testified that their access to the store was limited by the architectural barriers on the three occasions (November 17, 2002, July 29, 2003 and January 24, 2004). Plaintiffs further testified at trial that they visited the Rite Aid store on two other occasions and had no problems (July 30, 2005 and November 17, 2005). Barbara Hubbard testified that on another occasion they drove by and didn't go in because no changes to the ramps had been made.

The Court concludes that testimony of the Plaintiffs and the receipts received into evidence established three visits (November 17, 2002, July 29, 2003 and January 24, 2004) in which Plaintiffs were denied full access. The Court concludes that Plaintiffs are entitled to statutory damages of $4,000 under Section 52 for these three visits for an award of $12,000 to each Plaintiff totaling $24,000. Defendant are not entitled to any further damages under state law claims.

### CONCLUSION

It is hereby ordered that:

1) Defendants' oral motion to dismiss and Defendants' motion to dismiss certain claims (# 202–2) are denied;

2) Plaintiffs' Motion to prevent testimony or evidence regarding (in)accessibility of plaintiffs' home # 188 is moot;

3) Defendants' Motion # 202–1 to continue the trial is now moot;

4) Defendants' motion # 160 to exclude testimony is granted; and

5) Defendants' motion # 57 to exclude supplemental report was granted at trial.

The Court will enter judgment requiring the Defendants to make the property readily accessible to and usable by individ-

uals with disabilities consistent with these Findings of Fact and Conclusions of Law. Plaintiffs shall prepare and file a proposed judgment for consideration by the Court no later than 30 days from the date of this order. Defendants shall file any objections to the form of the proposed judgment no later than 15 days from the date the proposed judgment is filed. Any request for attorney fees shall be made by separate motion in accordance with Rule 54(d)(2) of the Federal Rules of Civil Procedure.