**Martin VOGEL, Plaintiff,**

v.

**RITE AID CORP. dba Rite Aid # 05585; Thrifty Payless, Inc. dba Rite Aid # 05585; William J. Knight, Trustee of the William J. Knight Living Trust Dated May 11, 2000, Defendants.**

**Case No. CV 13–00288 MMM (Ex).**

United States District Court,
C.D. California.

Jan. 17, 2014.

Scottlynn J. Hubbard IV, Alexander Nowinski, Law Office of Lynn Hubbard, Chico, CA, for Plaintiff.

## ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

MARGARET M. MORROW, District Judge.

On January 15, 2013, Martin Vogel filed a complaint against Rite Aid Corporation, dba Rite Aid # 05585, Thrifty Payless, Inc., dba Rite Aid # 05585, and William J. Knight, trustee of the William J. Knight Living Trust dated May 11, 2000 ("Knight"), alleging violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.;* the California Unruh Civil Rights Act ("the Unruh Act"), California Civil Code § 51; the California Disabled Persons Act ("the CDPA"), California Civil Code § 54; and California Health and Safety Code § 19953.[1] On March 13, 2013, the clerk entered Knight's default.[2] On April 25, 2013, Vogel filed the present motion for the entry of default judgment against

---

1. Complaint, Docket No. 1 (Jan. 15, 2013).

2. Default By Clerk as to William J. Knight, Trustee of the William J. Knight Living Trust dated May 11, 2000 ("Knight Default"), Docket No. 10 (Mar. 13, 2013).

Knight.[3] On May 15, 2013, the court dismissed the other two defendants with prejudice, pursuant to the parties' stipulation.[4] Vogel seeks statutory damages, attorneys' fees and costs, as well as injunctive relief requiring Knight to bring the store into compliance with the ADA Accessibility Guidelines ("ADAAG") and California's Building Code requirements.[5]

## I. FACTS ALLEGED IN THE COMPLAINT

Vogel is a T–3 paraplegic due to a motorcycle accident in 1986.[6] He is unable to walk or stand, and needs to use a wheelchair when traveling about in public.[7] Defendants own, operate, and/or lease Rite Aid Store No. 05585 ("Rite Aid"), located in Covina, California.[8] Rite Aid is a retail sales establishment open to the public, and is intended for nonresidential use.[9] Its operation affects commerce.[10]

Vogel visited Rite Aid and encountered both physical and intangible barriers that interfered with or thwarted his ability to use and enjoy the goods, services, privileges, and accommodations offered at the facility.[11] These barriers included: (a) access aisle slopes and cross slopes that exceed 2.0 %, making it difficult for Vogel to unload and/or transfer from his vehicle, as the slope caused his wheelchair to roll; (b) lack of parking spaces designated van accessible, making it difficult for Vogel to determine which space(s) would accommodate a van; (c) lack of van-accessible parking spaces, forcing Vogel to unload partially in a disabled parking space and risk being hit by an incoming vehicle; (d) lack of a sign on the men's restroom door indicating that the facility was accessible to Vogel; (e) a restroom door lock that required twisting, pinching, and/or grasping to operate, making it difficult for Vogel to use; (f) a water closet that obstructed the floor space required to access the disposable seat cover dispenser, making it difficult for Vogel to reach and use the dispenser; (g) a disposable seat cover dispenser that was mounted too high, making it difficult for Vogel to reach and use the dispenser; (h) a toilet tissue dispenser that was mounted too high, too far from the back wall, and too far from the front of the water closet, making it difficult for Vogel to reach and use the dispenser; and (i) pipes beneath the lavatory that were incompletely wrapped, causing Vogel to risk burning his legs when washing his hands.[12]

Vogel alleges that he was deterred from visiting Rite Aid on other occasions because he knew Rite Aid's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons like him.[13] Vogel asserts that he continues to be deterred from visiting Rite Aid due to future threats of injury created by the barriers.[14] He contends that defendants knew these elements and areas of Rite Aid were inaccessible, violated state and federal law, and

3. Motion for Default Judgment ("Motion"), Docket No. 21 (Apr. 25, 2013).

4. Order Re: Joint Stipulation for Dismissal, Docket No. 25 (May 15, 2013).

5. Motion at 8.

6. Complaint, ¶ 8.

7. Id.

8. Id., ¶ 7.

9. Id., ¶ 9.

10. Id.

11. Id., ¶ 10.

12. Id.

13. Id., ¶ 11.

14. Id.

interfered with or denied access to the physically disabled.[15] Despite having the financial resources to remove the barriers without difficulty or expense, defendants purportedly refuse to remove the barriers or seek an unreasonable hardship exemption to excuse their non-compliance.[16] For these reasons, Vogel asserts that defendants discriminated against him and the physically disabled public by denying them full and equal enjoyment of the store.[17]

## II. DISCUSSION

### A. Standard Governing Motions for Entry of Default Judgment

■ A court may enter judgment against parties whose default has been taken pursuant to Rule 55(b) of the Federal Rules of Civil Procedure. See *PepsiCo, Inc. v. California Security Cans.*, 238 F.Supp.2d 1172, 1174 (C.D.Cal.2002); *Kloepping v. Fireman's Fund*, No. C 94–2684 TEH, 1996 WL 75314, *2 (N.D.Cal. Feb. 13, 1996).

■ Granting or denying a motion for default judgment is a matter within the court's discretion. *Elektra Entertainment Group Inc. v. Bryant*, No. CV 03–6381 GAF (JTLx), 2004 WL 783123, *1 (C.D.Cal. Feb. 13, 2004); see also *Sony Music Entm't Inc. v. Elias*, No. CV 03–6387 DT (RCX), 2004 WL 141959, *3 (C.D.Cal. Jan. 20, 2004). The Ninth Circuit has directed that courts consider the following factors in deciding whether to enter default judgment: (1) the possibility of prejudice to plaintiff, (2) the merits of plaintiff's substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether defendant's default was

the product of excusable neglect, and (7) the strong public policy favoring decisions on the merits. See *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.1986); see also *Bryant*, 2004 WL 783123 at *1–2.

■ Once a party's default has been entered, the factual allegations of the complaint, except those concerning damages, are deemed to have been admitted by the non-responding party. See FED. R.CIV. PROC. 8(b)(6); see also, e.g., *Geddes v. United Fin.Group*, 559 F.2d 557, 560 (9th Cir.1977) (stating the general rule that "upon default[,] the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true"). The court, however, must still "consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 2688, at 63 (1998) (footnote omitted); see also *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir.1992) ("[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default"); *Doe v. Qi*, 349 F.Supp.2d 1258, 1272 (N.D.Cal.2004) ("[Although] the factual allegations of [the] complaint together with other competent evidence submitted by the moving party are normally taken as true ... this Court must still review the facts to insure that the Plaintiffs have properly stated claims for relief").

■ If the court determines that the allegations in the complaint are sufficient to establish liability, it must then determine the "amount and character" of the relief that should be awarded. 10A

---

**15.** *Id.*, ¶ 13.

**16.** *Id.*

**17.** *Id.*, ¶¶ 17, 36, 43.

Wright, Miller, & Kane, *supra,* § 2688, at 63; *Elektra Entertainment Group Inc. v. Crawford,* 226 F.R.D. 388, 394 (C.D.Cal. 2005) (stating that the district court has "wide latitude" and discretion in determining the amount of damages to award upon default judgment, quoting *James v. Frame,* 6 F.3d 307, 310 (5th Cir.1993)).

### B. Procedural Requirements

■■ Before a court can enter default judgment against a defendant, the plaintiff must satisfy the procedural requirements for default judgments set forth in Rules 54(c) [18] and 55 [19] of the Federal Rules of Civil Procedure, as well as with Local Rule 55–1. Local Rule 55–1 requires that a party moving for default judgment submit a motion (1) indicating when and against what party default has been entered; (2) identifying the pleading as to which default has been entered; (3) indicating whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative; (4) stating that the Servicemembers Civil Relief Act, 50 App. U.S.C. § 521, does not apply; and (5) affirming that notice has been served on the defaulting party if required by Rule 55(b)(2). CA CD L.R. 55–1, 55–2; *PepsiCo,* 238 F.Supp.2d at 1174.

Vogel has satisfied these requirements. His motion states that the clerk entered Knight's default on the complaint on March 13, 2013.[20] It also states that Knight is not a minor or infant, incompetent person, in military service, or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940, the predecessor to the Servicemembers Civil Relief Act.[21] Vogel's motion seeks statutory damages, an injunction, and attorneys' fees— the same forms of relief sought in his prayer for relief.[22] Additionally, the court takes judicial notice of the fact that, on April 24, 2013, although not required to do so under Rule 55(b)(2), Vogel served the motion for default judgment on Knight.[23] Vogel has thus complied with the procedural prerequisites for entry of default judgment. See, e.g., *PepsiCo,* 238 F.Supp.2d at 1175 (finding that the procedural requirements of Rule 55 and Local Rule 55–1 had been met where plaintiffs addressed each required factor in their application for default judgment).

### C. The *Eitel* Factors

The court must next determine whether, applying the *Eitel* factors, granting Vogel's

---

**18.** Rule 54(c) states that "judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment." FED.R.CIV.PROC. 54(c).

**19.** Rule 55(a) provides that the clerk must enter the party's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." FED.R.CIV.PROC. 55(a). Rule 55(b)(2) requires service on the defaulting party if that party has appeared in the action. FED.R.CIV.PROC. 55(b)(2) ("If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least

3 days before the hearing"); see also, e.g., *In re Roxford Foods, Inc.,* 12 F.3d 875, 879 (9th Cir.1993) (noting that Rule 55(b)(2) notice "is only required where the party has made an appearance"). As Knight has not appeared, service was not required.

**20.** Motion at 2; see also Knight Default.

**21.** *Id.*

**22.** Compare *id.* at 7 with Complaint, ¶¶ 1, 3–4 (Prayer).

**23.** Proof of Service of Motion for Default Judgment ("Motion POS"), Docket No. 21–3 (Apr. 25, 2013).

motion for the entry of default judgment is appropriate.

### 1. Possibility of Prejudice to Plaintiff

■ The first *Eitel* factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered. *PepsiCo*, 238 F.Supp.2d at 1177. Vogel contends that he has been, and continues to, suffer discrimination due to physical disability because of Knight's failure to comply with the ADAAG and California Building Code requirements in violation of the ADA, the Unruh Act, and the CDPA.[24] Knight has failed to appear and defend the trust. Absent entry of a default judgment, Vogel will most likely be without recourse against Knight, given Knight's unwillingness to cooperate and defend. Because Vogel will suffer prejudice if he is without recourse against Knight, this factor favors entry of a default judgment.

### 2. The Merits of Vogel's Substantive Claim and Sufficiency of the Complaint

■ The second and third *Eitel* factors "require that a plaintiff state a claim on which [it] may recover." *PepsiCo*, 238 F.Supp.2d at 1175; see also *Discovery Commc'n, Inc. v. Animal Planet, Inc.*, 172 F.Supp.2d 1282, 1288 (C.D.Cal.2001) ("The Ninth Circuit has suggested that the [ ] two *Eitel* factor[s] involving the substantive merits of Plaintiff's claims and the sufficiency of the complaint [ ] 'require that plaintiff's allegations state a claim on which [it] may recover,' " quoting *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)). As mentioned, Vogel's complaint pleads causes of action for violation of the ADA, the Unruh Act, the CDPA, and the California Health and Safety Code. His motion addresses only the claims for violation of the ADA and the Unruh Act. Be-

cause the court determines that Vogel has stated a claim under these two statutes and that he can recover all of his requested relief based on Knight's violation of these two statutes, it evaluates only these two claims.

#### a. Discrimination Under Title III of the ADA

Title III of the ADA prohibits discrimination by public accommodations. It provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Vogel alleges that Knight owns, operates, and/or leases the Rite Aid.[25] Knight is therefore liable for violating the ADA if Vogel shows that he suffered discrimination at the location due to his disability. Discrimination under Title III includes "a failure to remove architectural barriers ... in existing facilities ... where such removal is readily achievable." *Id.*, § 12182(b)(2)(A)(iv). The term "readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense." *Id.*, § 12181(9).

■ "To prevail on a Title III discrimination claim, the plaintiff must show that (1) [he] is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir.2007) (internal alteration orig-

---

**24.** Complaint, ¶¶ 15–51.

**25.** *Id.*, ¶ 7.

inal). In addition, "[t]o succeed on an ADA claim of discrimination on account of one's disability due to an architectural barrier, the plaintiff must also prove that: (1) the existing facility at the defendant's place of business [or property] presents an architectural barrier prohibited under the ADA and (2) the removal of the barrier is readily achievable." *Parr v. L & L Drive–Inn Restaurant,* 96 F.Supp.2d 1065, 1085 (D.Haw.2000); see also *Johnson v. Beahm,* No. 2:11–cv–0294 MCE JFM, 2011 WL 5508893, *2 (E.D.Cal. Nov. 8, 2011).

### i. Whether Vogel Has Standing to Bring his ADA Claim

 As with all causes of action, a plaintiff must have Article III standing to bring a claim under the ADA. To establish Article III standing, a plaintiff must demonstrate that he or she has suffered an injury in fact, that the injury is traceable to the defendant's challenged conduct, and that the injury can be redressed by a favorable decision. *Hubbard v. Rite Aid Corp.,* 433 F.Supp.2d 1150, 1162 (S.D.Cal. 2006). Vogel has Article III standing because he alleges that he was denied access to the services of Rite Aid and deterred from seeking those services in the future; this allegation is accepted as true by virtue of Knight's default. Rite Aid's architectural barriers were purportedly the cause of the denial of access, and Knight allegedly knew of it. Finally, an award of statutory damages and an injunction would redress Vogel's alleged injuries.

 Where a plaintiff seeks injunctive relief, he must also demonstrate a significant possibility of future harm. See *San Diego County Gun Rights Comm. v. Reno,* 98 F.3d 1121, 1126 (9th Cir.1996). "In the ADA context, in determining the likelihood that a plaintiff will return to

defendant's facility, courts have examined such factors as (1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant." *Hubbard,* 433 F.Supp.2d at 1162. Although Vogel does not allege an intent to return to the Store, this is not fatal to his case. Indeed, "[d]emonstrating an intent to return to a non-compliant accommodation is but one way for an injured plaintiff to establish Article III standing to pursue injunctive relief. A disabled individual also suffers a cognizable injury if he is *deterred* from visiting a noncompliant public accommodation because he has encountered barriers related to his disability there." *Chapman v. Pier 1 Imports (U.S.) Inc.,* 631 F.3d 939, 949 (9th Cir.2011) (emphasis added); see also *Doran v. 7–Eleven, Inc.,* 524 F.3d 1034, 1042 n. 5 (9th Cir. 2008) ("Once a disabled individual has encountered or become aware of alleged ADA violations that deter his patronage of or otherwise interfere with his access to a place of public accommodation, he has already suffered an injury in fact traceable to the defendant's conduct and capable of being redressed by the courts, and so he possesses standing under Article III ..."); *Pickern v. Holiday Quality Foods Inc.,* 293 F.3d 1133, 1138 (9th Cir.2002) ("We hold that a disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA has suffered 'actual injury' "). Since Vogel has alleged that he was twice deterred and continues to be deterred from visiting Rite Aid,[26] he has satisfied the requirements for Article III standing and can seek injunctive relief under the ADA.

26. *Id.,* ¶ 11.

### ii. Whether Vogel Has Shown that He Is Disabled Within the Meaning of the ADA

■ The ADA defines disability as "[a] physical or mental impairment that substantially limits one or more major life activities ... [,] a record of such an impairment[,] or being regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities as defined by the ADA include walking and standing. *Id.*, § 12102(2). Vogel asserts in his declaration that he is a paraplegic, is "unable to walk or stand, and require[s] the use of a wheelchair when traveling about in public."[27] Because this allegation is accepted as true, he has established a physical impairment that substantially limits the major life activities of walking and standing. Vogel is therefore disabled within the meaning of the ADA, and has satisfied the first element of his Title III discrimination claim.

### iii. Whether Vogel Has Shown that the Store is a Place of Public Accommodation

■ A sales establishment is a place of public accommodation. *Id.*, § 12181(7)(E). Vogel asserts that Rite Aid is a sales establishment open to the public, and is intended for nonresidential use.[28] He also asserts that Rite Aid's operations affect commerce.[29] Accepting these allegations as true, Vogel has proven the second element of his Title III discrimination claim.

### iv. Whether Vogel Has Shown that the Store's Architectural Barriers Denied Him Public Accommodations Due to His Disability

■ The next two elements of an ADA architectural barriers claim evaluate whether architectural barriers worked to discriminate against the plaintiff on account of his physical disability. Vogel states in his declaration that he visited Rite Aid on at least one occasion.[30] He states that during this visit, he encountered numerous barriers at Rite Aid, including access aisle slopes and cross slopes that exceeded 2.0% and lack of parking spaces designated as van accessible.[31] His complaint also alleges that there was no sign on the men's restroom door indicating that the restroom was accessible; the restroom door lock required twisting, pinching, and/or grasping to operate; the water closet obstructed the floor space required to access the disposable seat cover dispenser; the disposable seat cover dispenser was mounted too high; the toilet tissue dispenser was mounted too high, too far from the back wall, and too far from the front of the water closet; and the pipes beneath the lavatory were incompletely wrapped.[32] Vogel asserts that these barriers deterred him from visiting Rite Aid on at least two other occasions.[33]

Vogel contends these barriers violate the ADAAG.[34] Indeed, section 4.8.2 and section 4.8.6 of the ADAAG provide that the maximum slope of a ramp shall be 1:12 and the maximum slope of a cross ramp shall be 1:50. Section 4.1.2(5)(b) provides

---

27. Declaration of Martin Vogel in Support of Motion for Default Judgment ("Vogel Decl."), Docket No. 21–2 (Apr. 25, 2013), ¶ 2.

28. Complaint, ¶ 9.

29. *Id.*

30. Vogel Decl., ¶ 3.

31. *Id.*

32. Complaint, ¶ 10.

33. Vogel Decl., ¶ 3.

34. Motion at 2.

that "one in every eight accessible spaces, but not less than one, shall be served by an access aisle 96 in[ches] [ ] wide minimum and shall be designated 'van accessible' as required by 4.6.4." In turn, section 4.6.4 states that van accessible parking spaces shall be marked "by a sign showing the symbol of accessibility." Section 4.13.9 provides that "[h]andles ... shall have a shape that is easy to grasp with one hand and does not require tight grasping, tight pinching, or twisting of the wrist to operate." Section 4.22.7 states that "dispensers ... shall be on an accessible route." Section 4.16.6 provides that "[t]oilet paper dispensers shall be installed within reach." Finally, section 4.19.4 states that "[h]ot water and drain pipes under lavatories shall be insulated or otherwise configured to protect against contact." Accepting Vogel's allegations as true, the court concludes that he has satisfied the third and fourth elements of a Title III discrimination claim by showing that the barriers he encountered are prohibited by the ADA and denied him full and equal access to Rite Aid because of his disability.

#### v. Whether Vogel Has Shown the Removal of These Barriers is Readily Achievable

Whether removal of a barrier is readily achievable involves consideration of four factors:

"A) the nature and cost of the action needed ...; B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility; C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the num-

ber, type, and location of its facilities; and D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity." *Hubbard,* 433 F.Supp.2d at 1168 (citing 42 U.S.C. § 12181(9)).

The Ninth Circuit has yet to decide who has the burden of proving that removal of an architectural barrier is readily achievable. Various district courts throughout the circuit, however, have applied the Tenth Circuit's burden-shifting framework, as articulated in *Colorado Cross Disability v. Hermanson Family, Ltd.,* 264 F.3d 999 (10th Cir.2001). There the court held that the "[p]laintiff bears the initial burden of production to present evidence that a suggested method of barrier removal is readily achievable." *Id.* at 1006. If the plaintiff makes this showing, the burden shifts to the defendant, who "bears the ultimate burden of persuasion regarding [his] affirmative defense that a suggested method of barrier removal is not readily achievable." *Id.;* see *Beahm,* 2011 WL 5508893 at *2 (noting that district courts in the Ninth Circuit often apply the *Colorado Cross* framework); see also *Hubbard,* 433 F.Supp.2d at 1168 (noting that defendants bear the ultimate burden of proving that removal is not readily achievable); *Sceper v. Trucks Plus,* No. Civ S–09–0801 GEB EFB, 2009 WL 3763823, *3 (E.D.Cal. Nov. 3, 2009) (agreeing with the District of Arizona that until the Ninth Circuit provides additional and specific instruction to lower courts, it will follow the overwhelming majority of federal courts that apply the burden-shifting framework, especially in the context of a default judgment where defendants have

not appeared).[35]

■ Vogel provides little information about any of these factors. He does, however, allege that Knight knew of the architectural barriers at Rite Aid and has the financial resources to remove the barriers without difficulty or expense, yet has refused to either remove the barriers, make the services available through alternative methods, or seek an exemption.[36] And he also states that "[Knight] can easily remove the architectural barriers at [Rite Aid] without much difficulty or expense."[37] Federal regulations elucidate the types of barrier removals that are likely to be readily achievable. Under 28 C.F.R. § 36.304(b), examples of readily achievable steps to remove barriers include installing ramps, insulating lavatory pipes under sinks to prevent burns, repositioning the paper towel dispenser and other dispensers, installing accessible door hardware, and creating designated accessible parking spaces.

Vogel's allegation that removal of the barriers was readily achievable is sufficient to satisfy his burden of production. See, e.g., *Johnson v. Hall,* 2012 WL 1604715, *3 (E.D.Cal. May 7, 2012) (holding that plaintiff's allegation that architectural barriers "are readily removable" and that he sought injunctive relief to remove all readily achievable barriers" satisfied his burden); *Beahm,* 2011 WL 5508893 at *3 (holding that plaintiff's allegations that architectural barriers were readily remova-

ble was sufficient because plaintiff's allegations were taken as true on default); see also *Sceper,* 2009 WL 3763823 at *4 (granting default judgment on plaintiff's ADA claim even though plaintiff did not specifically allege that removal of barriers was readily achievable, but instead alleged that defendants were required to remove architectural barriers). Knight, for his part, has failed to meet his burden because he failed to appear and defend. The court thus concludes that Vogel has established the fifth and final element of his Title III discrimination claim. Vogel has stated a cause of action under the ADA.

### b. Discrimination Under the California Unruh Civil Rights Act

■ The Unruh Act provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their ... disability, [or] medical condition ... are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." CAL. CIV.CODE § 51(b). Unlike the ADA, the Unruh Act permits the recovery of monetary damages, in the form of actual and treble damages or statutory damages of $4,000 per violation. See *M.J. Cable, Inc.,* 481 F.3d at 731 (citing CAL. CIV. CODE § 52(a)). A violation of the ADA necessarily violates the Unruh Act, CAL. CIV. CODE § 51(f), and, although required if not based on an ADA violation, "no showing of inten-

---

**35.** In *Molski v. Foley Estates Vineyard and Winery, LLC,* 531 F.3d 1043, 1048 (9th Cir. 2008), the Ninth Circuit declined to apply the burden-shifting analysis of *Colorado Cross* in the context of removal of barriers within historical buildings. *Molski* appears to be limited to the historic building context, as the Ninth Circuit's rationale for putting the entire burden on the defendant was that the ADA guidelines for historic buildings place the burden on the "party with the best access to

information regarding the historical significance of the building" rather than "on the party advocating for remedial measures." *Id.* The decision does not address non-historic building compliance and is not controlling in this case. See *Johnson,* 2011 WL 5508893 at *2.

**36.** Complaint, ¶¶ 13, 21.

**37.** *Id.,* ¶ 20.

tional discrimination is required where the Unruh Act violation is premised on an ADA violation." *Lentini v. Cal. Ctr. for the Arts, Escondido,* 370 F.3d 837, 847 (9th Cir.2004). Because Vogel's complaint alleges a cognizable ADA claim, he has also properly alleged that Knight violated the Unruh Act.

### c. Conclusion Regarding Second and Third *Eitel* Factors

Taking the facts alleged in the complaint as true, the court concludes that Vogel has stated a claim for disability discrimination under both the ADA and the Unruh Civil Rights Act. The second and third *Eitel* factors thus favor entry of default judgment on these claims.

### 3. The Sum of Money at Stake

█ The fourth *Eitel* factor balances "the amount of money at stake in relation to the seriousness of the [d]efendant's conduct." *PepsiCo,* 238 F.Supp.2d at 1175; see also *Eitel,* 782 F.2d at 1471–72. Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct. See *Truong Giang Corp. v. Twinstar Tea Corp.,* No. C 06–03594 JSW, 2007 WL 1545173, *12 (N.D.Cal. May 29, 2007) (citing *Totten v. Hurrell,* No. 00–2718, 2001 U.S. Dist. LEXIS 20259, *2 (N.D.Cal. Nov. 28, 2001)).

Vogel seeks a judgment of $13,739.20, including statutory damages, attorneys' fees and costs.[38] This, plus any amount that would have to be spent to comply with an injunction, would be the entirety of Knight's liability should the court grant default judgment. Although not a form of monetary recovery, the injunction will undoubtedly require that Knight spend money to remove barriers at the location. As noted, however, the ADA limits this liability to removal of barriers that is readily achievable, and in this way caps a defendant's liability. The court concludes that the amount sought is neither too large nor to unreasonable when balanced against Knight's actions. Given Knight's failure to appear and defend, and thus his failure to show that he has complied with the ADA or Unruh Act, the court finds that statutory damages, attorneys' fees, and an injunction are needed. Courts frequently grant default judgment in Unruh Act and ADA cases and impose similar financial liabilities on the defendant. See, e.g., *Moore v. Cisneros,* No. 1:12–cv–00188 LJO SKO, 2012 WL 6523017, *4 (E.D.Cal. Dec. 13, 2012) (noting that an award of $10,119.70 on default judgment was "not a particularly large sum of money, nor does it appear unreasonable in light of Defendants' actions"); *Johnson v. Huynh,* No. CIV S–08–1189 JAM DAD, 2009 WL 2777021, *2 (E.D.Cal. Aug. 27, 2009) (holding that $12,000 was a "relatively small award of damages" in a default judgment case). For these reasons, the fourth *Eitel* factor favors the entry of default judgment against Knight as well.

### 4. The Possibility of Dispute

█ The next *Eitel* factor considers the possibility that material facts are disputed. *PepsiCo,* 238 F.Supp.2d at 1177; *Eitel,* 782 F.2d at 1471–72. As discussed, Vogel has adequately alleged disability discrimination in violation of the ADA and the Unruh Act by enumerating the architectural barriers present at Rite Aid in his complaint. Knight has failed to appear and has therefore admitted all material facts alleged in Vogel's pleading. See, e.g., *PepsiCo,* 238 F.Supp.2d at 1177 ("Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages," citing

---

**38.** Motion at 8.

*TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917–18 (9th Cir.1987)). Since Vogel's factual allegations are presumed true and Knight has failed to oppose the motion, no factual disputes exist that would preclude the entry of default judgment. This factor, therefore, favors the entry of default judgment against Knight.

### 5. Possibility of Excusable Neglect

■ The seventh *Eitel* factor considers whether a defendant's default may have resulted from excusable neglect. *PepsiCo,* 238 F.Supp.2d at 1177; see also *Eitel,* 782 F.2d at 1471–72. The possibility of excusable neglect in this case is remote. There is no indication that Knight allowed the trust's default to be taken as the result of excusable neglect. The record indicates that Knight had adequate notice he had been sued in his capacity as trustee— Knight was properly served with the summons and complaint,[39] the application for clerk to enter default,[40] and the instant motion for default judgment.[41] See *Shanghai Automation Instrument Co., Ltd. v. Kuei,* 194 F.Supp.2d 995, 1005 (N.D.Cal.2001) (finding no excusable neglect because defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion"). The court finds it reasonable to infer that Knight's default was not the product of excusable neglect. Accordingly, this factor weighs in favor of the entry of default judgment.

### 6. Policy Favoring Decisions on the Merits

■ "Cases should be decided upon their merits whenever reasonably possible." *Eitel,* 782 F.2d at 1472. The mere

enactment of Rule 55(b) indicates, however, that "this preference, standing alone, is not dispositive." *PepsiCo,* 238 F.Supp.2d at 1177 (quoting *Kloepping,* 1996 WL 75314 at \*3); *id.* ("Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible"). Since Knight failed to appear and defend, the seventh *Eitel* factor does not preclude the entry of default judgment against him.

### 7. Conclusion Regarding the *Eitel* Factors

Aside from the policy of deciding cases on the merits, all of the *Eitel* factors weigh in favor of the entry of default judgment. Consequently, the court finds it appropriate to grant Vogel's motion for default judgment against Knight.

### D. The Character and Amount of Plaintiff's Recovery

As mentioned, Vogel seeks injunctive relief, attorneys' fees and costs under the ADA and Unruh Act, and statutory damages under the Unruh Act.[42] Under Rule 8(a)(3), a plaintiff's demand for relief must be specific, and he "must 'prove up' the amount of damages." *Philip Morris USA Inc. v. Banh,* No. CV 03–4043 GAF (PJWx), 2005 WL 5758392, \*6 (C.D.Cal. Jan. 14, 2005); *Bryant,* 2004 WL 783123 at \*5 ("Plaintiffs must 'prove up' the amount of damages that they are claiming"). Rule 54(c) limits the relief that can be sought in a motion for entry of default judgment to that identified in the complaint. Fed. R.Civ.Proc. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the plead-

---

**39.** Proof of Service, Docket No. 4 (Feb. 22, 2013).

**40.** Application for Clerk to Enter Default, Docket No. 8 (Mar. 12, 2013).

**41.** Motion POS.

**42.** Motion at 7–8.

ings"). See also *PepsiCo*, 238 F.Supp.2d at 1174 (stating that a default judgment "shall not be different in kind from or exceed in amount that prayed for in the [complaint]"). Also as noted, defaulting defendants are not deemed to have admitted facts concerning damages alleged in the complaint. See *id.* at 1177 ("Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages," citing *TeleVideo Sys.*, 826 F.2d at 917–18).

### 1. Statutory Damages

■ Vogel seeks $12,000 in statutory damages under the Unruh Act.[43] The act provides that a plaintiff subjected to discrimination is entitled to recover $4,000 for each occasion on which he was denied equal access. CAL. CIV. CODE § 52(a). Proof of actual damages is not a prerequisite to the recovery of statutory minimum damages. *Hubbard*, 433 F.Supp.2d at 1170 (citing *Botosan v. Paul McNally Realty*, 216 F.3d 827, 835 (9th Cir.2000)). To recover statutory damages, a plaintiff need only show that he was denied full and equal access, not that he was wholly excluded from enjoying defendant's services. *Id.; Hubbard v. Twin Oaks Health and Rehabilitation Center*, 408 F.Supp.2d 923, 932 (E.D.Cal.2004). "A plaintiff is denied full and equal access only if the plaintiff personally encountered the violation on a particular occasion, or the plaintiff was deterred from accessing a place of public accommodation on a particular occasion." CAL. CIV.CODE § 55.56(b).

"A plaintiff demonstrates that he or she was deterred from accessing a place of public accommodation on a particular occasion only if both of the following apply: (1) The plaintiff had actual knowledge of a violation or violations that prevented or reasonably dissuaded the plaintiff from accessing a place of public accommodation that the plaintiff intended to use on a particular occasion; (2) The violation or violations would have actually denied the plaintiff full and equal access if the plaintiff had accessed the place of public accommodation on that particular occasion." CAL. CIV.CODE § 55.56(c).

The Ninth Circuit has stated that a plaintiff can recover statutory damages even if he did not enter the facility. *Hubbard v. Genuine Parts Co.*, No. 03 CV 00196 J JAH, 2003 WL 24219646, *2 (S.D.Cal. May 1, 2003) (citing *Paul McNally Realty*, 216 F.3d at 835).

■ Vogel has submitted a declaration that provides affirmative evidence of his damages. He states that he visited Rite Aid once, encountered access barriers and was deterred from visiting twice thereafter because he had personal knowledge of the barriers.[44] This suffices to show three violations of the Unruh Act. Thus, an award of $12,000 in statutory damages would be appropriate.

Although Vogel has shown that he suffered three violations of the Unruh Act, the court must consider whether to reduce the award in light of statutory requirements and case law. The California Supreme Court has stated in dicta that there may be a point at which statutory damages for each offense will be so high that equity and constitutional constraints cabin a defendant's liability under the Unruh Act. *Angelucci v. Century Supper Club*, 41 Cal.4th 160, 179–80, 59 Cal.Rptr.3d 142, 158 P.3d 718 (2007). An award of $12,000 does not appear to trigger such concerns, however, as courts frequently make an award of this magnitude under the Unruh Act. See e.g., *Feezor v. Del Taco, Inc.*, 431

---

**43.** *Id.* at 7.

**44.** Vogel Decl., ¶¶ 3, 5.

F.Supp.2d 1088, 1091 (S.D.Cal.2005) ("[T]he Court finds Plaintiff is entitled to the statutory minimum of $12,000–$4,000 for each time he patronized the Restaurant"); *Hubbard,* 433 F.Supp.2d at 1170 ("The Court concludes that Plaintiffs are entitled to statutory damages of $4,000 under Section 52 for these three visits for an award of $12,000 to each Plaintiff totaling $24,000"). The court therefore awards Vogel $12,000 in statutory damages.

## 2. Injunctive Relief

Vogel also seeks injunctive relief under the ADA and the Unruh Act compelling Knight to remove the architectural barriers at Rite Aid.[45] A court may grant injunctive relief for violations of the Unruh Act under § 52.1(h). To be entitled to injunctive relief under 42 U.S.C. § 12188(a)(2), Vogel must show that Knight has violated the ADAAG. "In the case of violations [of the accessibility provisions] of this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . ." *Id.;* see *Moeller v. Taco Bell,* 816 F.Supp.2d 831, 859 (N.D.Cal.2011). A plaintiff is not required to satisfy the other prerequisites generally needed for injunctive relief since "[t]he standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief." *Moeller,* 816 F.Supp.2d at 859 (quoting *Antoninetti v. Chipotle Mexican Grill, Inc.,* 643 F.3d 1165, 1175–76 (9th Cir.2010)). Thus, injunctive relief is proper when architectural barriers at defendant's establishment violate the ADA and the removal of the barriers is readily achievable. See, e.g., *Moreno v. La Curacao,* 463 Fed.Appx. 669, 670 (9th Cir.2011) (Unpub.Disp.); *Johnson v. Singh,* No.

2:10–cv–2547 KJM JFM, 2011 WL 2709365, *3 (E.D.Cal. July 11, 2011); *Sceper,* 2009 WL 3763823, *4.

As noted, Vogel has stated a viable Title III discrimination claim. There are various architectural barriers at Rite Aid that violate the ADAAG, and the removal of those barriers by Knight is readily achievable so long as Knight, in his capacity as landlord, has the ability under the lease agreement and state law to access the premises and make the physical changes necessary to remove the specific barriers about which Vogel complains. See 42 U.S.C. § 12181(9) (whether the removal of barriers is readily achievable depends, *inter alia,* on the "administrative or fiscal relationship of the facility or facilities in question to the covered entity"); see *Disabled Rights Action Committee v. Las Vegas Events, Inc.,* 375 F.3d 861, 880 (9th Cir.2004) (discussing § 12181(9), noting that defendants entered into a short-term license to use an arena at the University of Las Vegas for the purpose of conducting a rodeo, stating that their "Title III obligation would be determined with respect to the short term nature of [their] relationship with the Center," and noting that "[m]eaningful relief could . . . be granted by enjoining [them] from making certain kinds of operational decisions regarding conditions over which they have control— e.g., enjoining them from removing accessible floor seating, or requiring the erection of temporary ramps or lifts").

Injunctive relief compelling Knight to remove barriers at Rite Aid to the extent he has the legal right to do so under the lease and state law so that the facility is readily accessible to and usable by individuals with disabilities is therefore appropriate. Specifically, Knight is enjoined to

---

**45.** Motion at 7.

remove all architectural barriers identified in Vogel's complaint, i.e., Knight must reduce all access aisle slopes and cross-slopes that exceed 2.0% by installing ramps, create a van-accessible parking space that is appropriately labeled, post a compliant sign on the restroom, install compliant restroom door handles, insulate pipes under restroom sinks, and reposition the paper towel and disposable seat cover dispensers in the bathroom to the extent he has control over these aspects of the store under the lease and state law. See 28 C.F.R. § 36.304.

### 3. Attorneys' Fees

■ Vogel also requests $1, 320 in attorneys' fees pursuant to Local Rule 55–3.[46] Under Local Rule 55–3, when an applicable statute provides for the recovery of reasonable attorneys' fees, fees are to be calculated pursuant to the schedule set forth in the rule. For a judgment of $10,000 to $50,000, the court is to award attorneys' fees of $1,200 plus 6% of the amount over $10,000, exclusive of costs. See CA CD L.R. 55–3; *Bravado Int'l Grp. Merch. Services, Inc. v. Cha*, No. CV 09–9066 PSG (CWx), 2011 WL 651851, *5 (C.D.Cal. Feb. 11, 2011) (applying the Rule 55–3 schedule to award fees in a default judgment context). Both the Unruh Act and the ADA authorize a prevailing plaintiff to recover reasonable attorneys' fees, expenses, and costs. 42 U.S.C. § 12205; Cal. Civ.Code § 52(a). Based on entry of a $12,000 judgment under the Unruh Act, an award of $1,320 in fees under Rule 55–3 is appropriate. Vogel's counsel does not seeks an amount that exceeds this figure, and the court therefore awards plaintiff attorneys' fees of $1,320.

### 4. Costs

Vogel also seeks to recover costs of $419.20.[47] Of this amount, $350 is a filing fee, $60 represents fees for service of process, and $9.20 constitutes the cost of 92 photocopies at $0.10 per page for mandatory chambers copies. The fees are reasonable and the court will award them.

### III. CONCLUSION

For the reasons stated, the court grants Vogel's motion for default judgment against Knight. The court awards Vogel $12,000 in statutory damages, $1,320 in attorneys' fees and $419.20 in costs. The court will also enter an injunction against Knight, compelling him to reduce all access aisle slopes and cross-slopes that exceed 2.0% by installing ramps, create a van-accessible parking space that is appropriately labeled, install compliant restroom door handles, post a compliant sign on the restroom door, insulate pipes under restroom sinks, and reposition the paper towel and disposable seat cover dispensers in the restroom, to the extent he has the power to do so under the terms of any applicable lease agreement and state law.